RANDOLPH M. VALZ and Others, Appellants, v. SHEEPSHEAD BAY BUNGALOW CORPORATION and Others, Respondents.

Second Department, June 24, 1927.

Mortgages — foreclosure — action to set aside judgment on ground that plaintiffs herein, non-residents, were not properly served with summons — order for publication directed publication in Brooklyn Daily Times — publication was made erroneously in Brooklyn Daily Eagle — plaintiffs herein were properly served by mail and received summons, complaint and order — judgment will not be set aside.

This is an action to set aside and declare null and void a judgment and sale of real property in foreclosure upon the ground that the plaintiffs, non-residents, sole heirs at law of the mortgagor, have not been served with the summons. The basis of plaintiffs' contention is that, notwithstanding they actually received through the mail a copy of the summons, complaint and order of publication, the publication was made in the Brooklyn Daily *Eagle* instead of the Brooklyn Daily *Times*, as required by the order of publication. Plaintiffs, having actually received a copy of the summons, complaint and order in the action, and their rights not having been prejudiced, the judgment entered in the foreclosure action will not be set aside because of the mistake made by the attorney in making publication in the wrong paper.

APPEAL by the plaintiffs, Randolph M. Valz and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Kings on the 25th day of September, 1926, upon the decision of the court rendered after a trial at the Kings Special Term.

*Philip S. Dean* [*Robert E. L. Lewis* with him on the brief], for the appellants.

*Hugo Hirsh* [*Morgan J. O'Brien, Jr.,* and *Bernard Sobol* with him on the brief], for the respondents American Trust Company and others.

*Clarence F. Corner,* for the respondents Sara Rosenblum and others.

KAPPER, J.   The action is to set aside and declare null and void a judgment and sale of real property in foreclosure upon the ground that the plaintiffs, who are the sole heirs at law of the mortgagor, had not been served with the summons in the action.   The mortgage was for $25,000 upon property in the borough of Brooklyn owned by Antonio M. Valz, a resident of the State of Virginia, and which, upon foreclosure sale on January 31, 1918, brought but $10,000, the deficiency judgment being above $15,000.   The property has since been frequently transferred and improved so that it is said to be now worth approximately $700,000.   Valz, the mortgagor, died on July 19, 1916, seized of the legal title, leaving him surviving, as his only heirs at law the plaintiffs herein.   About a year after his death the foreclosure action was begun, and the deceased mortgagor was named as a defendant, the plaintiffs in the foreclosure suit not knowing he had died.   On learning this fact, a supplemental summons and an amended complaint were filed on September 25, 1917, in the office of the clerk of the county of Kings, and this was followed on October 17, 1917, with an order for the service of said supplemental summons and amended complaint upon the plaintiffs here by publication.

What happened was this: The order of publication directed such publication to be made in two newspapers published in Brooklyn, to wit, the Brooklyn Daily *Times* and the Brooklyn *Citizen*.   The order further directed that on or before the day of the first publication, " plaintiff deposit in the general post office in the Borough of Brooklyn, County of Kings, sets of copies of the supplemental summons and amended complaint in this action, and of this order, each contained in a securely closed post paid wrapper directed to said defendants as follows."   Then the order named the plaintiffs in the present action, amongst others, as " said defendants " upon whom such service by mail was to be made.   It is undisputed that through some error of the clerk employed by plaintiff's attorney in the foreclosure suit, publication was caused to be made for the requisite period of time in the Brooklyn Daily *Eagle* instead of in the Brooklyn Daily *Times*, as the order directed, the other paper, the Brooklyn *Citizen*, having duly published as the order required; and it is also undisputed that the copies of the order of publication which were directed by it to be mailed to the non-resident defendants were, through like clerical error, made to read that publication was to be in the Brooklyn Daily *Eagle* instead of the Brooklyn Daily *Times*.

At this point it is important to note that service by mail, as the order directed, of the supplemental summons and amended complaint in the foreclosure action, and of the purported order of

publication, correct in all respects except as to the misnomer of one of the two newspapers, was made, and those papers were received by each of the plaintiffs in the present action as defendants in the foreclosure action; and it is not contended by them that they were not apprised, in due time, of the pendency of the foreclosure suit. What they do now claim is that the County Court of Kings county, in which the foreclosure action was commenced, never obtained jurisdiction over them by reason of the defect pointed out in the naming of the newspaper.

The property involved has changed hands a considerable number of times, and has been divided and subdivided and improved; and apparently, with some possible apprehension of the institution of the very action now before us, the attorney for the plaintiff in the foreclosure action applied for and obtained on April 14, 1924, an order of the County Court amending *nunc pro tunc*, as of the date of the filing of the original order of publication, October 17, 1917, " by inserting therein the name, Brooklyn Daily *Eagle*, in place and stead of Brooklyn Daily *Times*, and that the Clerk of the County of Kings is hereby directed to file this order among the papers and with the judgment roll in the above-entitled action and without prejudice to any of the proceedings heretofore had in the above-entitled action." The learned Special Term decided that while it was mandatory upon the court or judge making the order of publication to direct such publication in two newspapers in so far as the provision of the statute (Code Civ. Proc. § 440) was concerned, yet the same statute which authorized the court to designate the two newspapers was to that extent merely *discretionary*, and not jurisdictional in so far as involved the error of the attorney's clerk but was a mere *irregularity* which was curable and cured by the *nunc pro tunc* order.

I think, upon authority, that the learned Special Term correctly decided this case. In *Mishkind-Feinberg Realty Co.* v. *Sidorsky* (189 N. Y. 402) it was held (as per syllabus): " Where an order directing the service of a summons by publication upon a non-resident defendant, without the State, conformed to the statute (Code Civ. Pro. § 440) in every respect except that, by mistake and clerical error, the words ' notice of object of action hereto annexed '. were used in the place of the words ' complaint hereto annexed,' required by the statute, and the summons was duly published, together with the notice required by the statute, and the summons, complaint, notice of object of action, order of publication and affidavits upon which it was granted were duly served upon such defendant by mail, the defendant was thereby fully and fairly apprised that she was a party to the action and that

her interest in the property would be cut off by the judgment to be obtained in the action and the sale thereunder; the Supreme Court had power, therefore, after judgment of foreclosure, upon the papers in the action and proof of the facts stated, to amend the order of publication *nunc pro tunc* by substituting therein the words ' complaint annexed hereto ' in place of the words ' notice of object of action hereto annexed,' since the order was not void, by reason of such error, but irregular, and the court has ample power, either before or after judgment in furtherance of justice, to amend, or cure, any irregularity in process, pleading or proceeding.    (Code Civ. Pro. § 723.)" *

In *Loring* v. *Binney* (38 Hun, 152; affd., without opinion, 101 N. Y. 623) the summons was served upon certain non-resident defendants, some of whom were infants, by publication, pursuant to an order made upon a sufficient affidavit in the usual form, directing the summons to be served by publication, and by mailing a copy of the summons and complaint and the order of publication to each of the said defendants.    In compliance therewith the proper papers were mailed to each non-resident defendant at his or her place of residence, and the summons, with a notice attached thereto, was published in the newspapers designated in the order. This notice was defective in two respects, it was not directed to those defendants only who were to be served, and it stated that the summons was served without the State, pursuant to an order of a judge as provided by section 443 of the Code of Civil Procedure, instead of stating that it was served by publication as required by section 442.    Held, that these irregularities did not prevent the court from acquiring jurisdiction over the absent defendants, and that a purchaser of real estate at a sale under a judgment entered in such action acquired a good title thereto which he would be compelled to accept.

To understand the force of these decisions, it would be well to look at the statutory provisions of. the Code of Civil Procedure (now rules 50, 51 and 52 of the Rules of Civil Practice).    Section 440 of the Code of Civil Procedure provided that the order of publication *must* direct publication of the summons in two newspapers " designated in the order as most likely to give notice to the defendant " for a specified time.    The order *must* also contain a direction for a deposit in a post office by plaintiff on or before the first day of publication of a set of copies of the summons, *complaint* and order, each contained in a securely closed postpaid wrapper, directed to the defendant.    Section 442 declared that, on or before the first day of publication, the summons, complaint

*See Civ. Prac. Act, § 105.— [REP.

and order, and the papers upon which the order was made, must be filed with the clerk; and a notice, subscribed by plaintiff's attorney, and directed *only* to the defendant or defendants to be thus served, in form prescribed in said section, " must be subjoined to, and published with the summons." Section 443 provided that where service is made without the State under an order of publication, the notice referred to in section 442 must be served with the summons, in all respects like the notice required in section 442, except that the words " without the State of New York " must be substituted for the words " by publication." In each and every one of these instances, the statutes indicated that compliance with their terms and provisions *must* be had. While it is commonly asserted, and such is the claim of the plaintiffs, appellants, here, that statutory provisions prescribing the steps to be taken in the acquirement of jurisdiction must be followed strictly, the language of the opinion in the *Mishkind Case* (*supra*) squarely indicates that a " substantial compliance " suffices. It was there said by Judge CHASE, writing for a unanimous court (p. 406): "An action is commenced by the service of a summons (Code Civil Procedure, sec. 416),* and by it a defendant is notified that his rights are challenged. Service of the summons, that is, notice of the commencement of the action and an opportunity by a defendant to appear and defend his rights and interests, are the important prerequisites to jurisdiction by a court. Our Code of Civil Procedure prescribes how notice must be given and a substantial compliance with such notice is necessary. Unimportant and unessential variations from the form of notice prescribed not affecting the substantial rights of the defendant are irregularities which may be cured by amendment pursuant to the general authority of the court to amend a process, pleading or other proceeding in furtherance of justice."

Certainly, the language quoted concedes that there may be a " variation " from the prescribed procedure which is " unimportant and unessential." It necessarily follows that a particular requirement of a statute is not in itself jurisdictional, if a failure to comply literally therewith may be deemed to be an unimportant variation. In other words, even in a statute prescribing the method of acquiring jurisdiction, a departure from certain features of the outlined procedure is not necessarily inconsistent with a substantial compliance sufficient for the acquisition of jurisdiction. In the *Mishkind* case the order itself was defective. As I read the case, the order directed the mailing of a copy of the *notice of object of action* instead of the *complaint,* as required by section 440 of the Code. The correction of the error, by amendment *nunc pro tunc* after

* Now Civ. Prac. Act, § 218.— [REP.

judgment, was upheld and the language above quoted was used in reference to that situation. It will be noted that in the *Mishkind* case the power of amendment was utilized to make the order conform to the requirements of the statute, by striking from the order a provision which the court had no discretionary or statutory power to include therein and inserting in its place the provision actually required by the statute. Why, then, in the present case, may the court not strike from the order a provision which it did have power to insert and substitute in its place a provision also within its admitted power to have inserted in the first instance? In the *Mishkind* case the order served failed to comply with the statute. In the present case the publication failed to comply with the order. It would seem that the court's failure to follow the requirements of the statute was as serious as the attorney's failure to observe requirements of the order, and that the exercise of the court's power to cure the defect in the *Mishkind* case was as drastic as in the present case. The language of section 440 of the Code is in form mandatory. It provides that the order *must* contain a direction to mail copies of the summons, *complaint* and order. Also the language of the same section (now rule 50 of the Rules of Civil Practice) is equally mandatory in its requirement that the publication be in two newspapers " designated in the order as most likely to give notice to the defendant." In the *Mishkind* case the copy of the *complaint* was not mailed pursuant to the *order,* for the order erroneously provided for mailing the *notice of object of action* instead of the *complaint.* And, in the present case, the publication in the *Eagle* was not pursuant to the order, for the order directed publication in a different paper. Of course, a distinction may be drawn between the two cases, but I am unable to see that the distinction is based upon any fundamental principle which calls for the application of different legal rules. It seems to me that non-compliance with the statute in the one case, and non-compliance with the order in the other, are variations which fall within the same category. In the *Mishkind* case an examination by the defendant of the original order would have disclosed that the mailing of the *complaint* was not directed by the order as the statute required, and in the present case an examination of the original order would have shown that the publication in the *Eagle* was not directed by the order. In neither case was the defendant prejudiced by the error, and in each the substantial compliance with the statutory requirements was effective to notify the defendants of the pendency of the action. Especially is this so, when the supplemental summons, amended complaint and the order of publication, erroneous only in the

particular pointed out, were in fact duly mailed and admittedly received.

In view of the marked tendency, evidenced by statutory enactments and judicial decisions, to break away from antiquated legal precedents and disregard technical errors (*Stuyvesant* v. *Weil*, 167 N. Y. 421, 426, last paragraph), is there a substantial legal ground for the contention that the situation in the *Mishkind* case and the present case require the application of different legal rules? In the present case the error was innocent. There was no willful failure to comply with the order. Nothing indicates that the error in fact deprived the defendants (plaintiffs here) of the opportunity " to appear and defend his [their] rights and interests." The error might with some reason be deemed to be material, even fatal, in cases where mailing is dispensed with because the residence of the defendant is unknown. But where the address of the defendants in fact is known and the necessary papers are mailed to them at that address (and so confessedly received), why is not an error of the character here involved an " unimportant " variation?

It was further said in the *Mishkind* case (p. 407): "After the sale on proof that the order included a direction to mail to the defendant a copy of the notice of object of action instead of the complaint, and that it was so included by inadvertence and clerical error, an order was made as of the date of the original order *nunc pro tunc*, striking out the words ' notice of object of action,' and in place thereof inserting the word ' complaint.' The Supreme Court has very broad powers, either before or after judgment in furtherance of justice, to amend any process, pleading or proceeding. (Sec. 723.) It would be difficult to use more comprehensive language than is used in that section. The correction of the clerical error in the order was not harmful to Rabinovitch but was in furtherance of justice. To deny power in the court in this case to make such an order would subordinate substance to form. The statutory provisions relating to the commencement of an action are intended for the protection of the rights of the persons who are named as defendants therein. Whatever the statute requires that in any way tends to aid a defendant in the protection of his rights is necessary to be complied with to give the court jurisdiction. Where it is clear that a deviation from the statute is unimportant and unsubstantial and that the defendant has not been prejudiced thereby it is within the power of the court to amend the process or proceeding. The order in this case was not void but irregular and the irregularity has been cured."

In the case of *Loring* v. *Binney* (*supra*) the General Term, First Department, per Mr. Justice DANIELS (pp. 154, 155), said: "As

the summons was served by publication, and not by the delivery of a copy of it to the respective defendants out of the State, they each received by the papers which were mailed to them all that was required should be sent to them. The practice to this extent is controlled and regulated by section 440 of the Code, which by its effect directs that copies of the summons, complaint and order should be mailed to the defendants to be served at the place or places where they would probably receive matter transmitted through the post-office. This section was fully complied with, and as the places to which the copy summons, complaint and order were mailed, appear to be the places of residence of the respective defendants to whom they were sent by mail, it is to be presumed that they received these copies, *and in that manner acquired all the information concerning the action and the authority to serve the summons by publication which the law provided they should have.* They were in this manner informed of the object and design of the action, and summoned to appear and present their defense by way of answer or that in default thereof judgment would be taken against them for the relief demanded in the complaint. And the authority for making this service was disclosed by the copy of the order accompanying the other papers. The same result was also attained by the publication which was in fact made of the summons itself, and neither of the defendants, if reliance was placed upon the form of the publication, could have been misled to his or her prejudice by the statement in the notice that the summons was served without the State of New York, instead of its being stated that it was served by publication. For the residue of the notice was required to be and was identical in both classes of cases, and that contained the information that the summons was served pursuant to an order of a judge of the court, as that notice was required to be given by each of these sections of the Code. Whether, therefore, the notice stated that the summons was served without the State of New York, or by publication, was not important, for the purpose designed to be accmoplished by the notice required in the one case to be published, or in the other to be served upon the defendant. *For by either form of notice the essential information would be given that service of the summons was made under the authority of an order of a judge of this court. And the information was further given when that order was made and where it could be found. The substantial objects intended to be accomplished by the notice were accordingly secured,* even if the defendant relied upon the publication itself, for it clearly appeared from it that the publication was made under and by virtue of the authority vested in the judges of the court over this subject. And as that information was

clearly supplied it could not be important as a matter of jurisdiction whether the notice stated that the summons was served by publication or without the State of New York pursuant to the order of the judge." (Italics mine.)

The single case in this State upon which the appellants rely is *Brisbane* v. *Peabody* (3 How. Pr. 109, Erie Special Term, September, 1847), where a judgment was taken by default upon substituted service by publication. The order of publication directed it to be published in a State paper and in the Buffalo *Courier.* As a matter of fact, the publication, while made in the State paper, was not published in the *Courier* but was published in the Buffalo *Commercial Advertiser.* It was held that the court acquired no jurisdiction of the defendant, and was without authority to enter judgment by default. In so far as the report of the case shows, it does not appear that the defendant, who resided in the State of Georgia, ever knew of the pendency of the action against him. If, in fact, the defendant did know of the pendency of the action, then the case should not be followed as an authority.

The appellants also cite a Missouri case (*Otis* v. *Epperson*, 88 Mo. 131), where it was held that the entry of judgment against a non-resident defendant was improper for lack of jurisdiction because of a *failure to publish the order of publication*, as required by the Missouri statute, which provided: " Every order (of publication) against non-residents * * * shall be published in some newspaper published in this State, which the plaintiff, or his attorney of record, with the approval of the judge or clerk making the order may designate as most likely to give notice to the person to be notified." It is obvious that the Missouri statute is not our statute. We do not require that the order of publication be published. It suffices with us that the publication be simply, besides the summons, of the notice that the summons is served by publication pursuant to an order of the judge who made it. If the steps requisite to jurisdiction under the Missouri statute make the holding in the case cited similar to the facts presented in the case at bar, that case should not be followed, in my opinion. It may be of importance to note that in *Davidson* v. *Laclede Land & Improvement Co.* (253 Mo. 223, 230) the Supreme Court of Missouri refer to *Otis* v. *Epperson* (*supra*) as deciding that there was " a failure to designate the paper in which the order was to be published."

The stipulated facts in the case at bar state: " On the 19th day of October, 1917, there were deposited in the General Post Office in the Borough of Brooklyn, County of Kings, and in due course of mail received by the respective addressees, eleven sets of copies of the supplemental summons and amended complaint in said

action and of the paper of which Exhibit E hereto annexed is a copy, each contained in a securely closed, post-paid wrapper, respectively directed to the several defendants therein and hereinafter named, at the addresses and places below stated." (Here followed the names of said eleven " respective addressees," all of the plaintiffs being so included.)

Exhibit E, referred to, is the copy of the order of publication correct in every respect with the exception of the naming of the *Eagle* instead of the *Times*, as the original order provided. Of actual notice of the foreclosure action to these plaintiffs, as defendants therein, there is no question; and the order of publication, as actually served, recites that the plaintiffs in that action made proof to the satisfaction of the court " that the amended complaint herein demands judgment that the vested lien in favor of the plaintiffs be enforced and that the aforesaid defendants be barred and foreclosed of all right, claim, lien and equity of redemption in the property described in said amended complaint." Hence, these plaintiffs were fully apprised that they were defendants in the foreclosure action to foreclose a mortgage made by their father, and that their interests in the property would be cut off by the judgment to be obtained in the action and the sale thereunder.

In my opinion the judgment below was right and should be affirmed, with costs.

KELLY, P. J., YOUNG, LAZANSKY and HAGARTY, JJ., concur.

Judgment unanimously affirmed, with costs.