## UNITED STATES v. KRAMER.

(Circuit Court of Appeals, Fifth Circuit. December 23, 1919.)

### No. 3453.

ALIENS ☜71½, New, vol. 7 Key-No. Series—SUFFICIENCY OF EVIDENCE OF FRAUDULENT NATURALIZATION.

That a naturalization certificate was obtained fraudulently and not in good faith may be established by subsequent acts and statements of the naturalized citizen, showing his disloyalty and continued adherence to his former sovereign.

Appeal from the District Court of the United States for the Western District of Texas; Duval West, Judge.

Suit by the United States against Herman Kramer for cancellation of naturalization certificate. Decree of dismissal, and the United States appeals. Reversed and remanded.

The United States, through the United States attorney, brought her bill against Herman Kramer, formerly a subject of the German emperor, to cancel his certificate of citizenship issued to him on December 30, 1912, on the ground that it was fraudulently and unlawfully obtained.

The bill showed that Herman Kramer had been admitted to citizenship by the United States District Court for the Western District of Texas, in which court the bill was filed, and was then residing within the jurisdiction of the court, and further substantially alleged that Kramer, at the time he was admitted to citizenship, declared under oath that he would obey the Constitution and laws of the United States and bear true faith and allegiance to same; that he then and there renounced forever all allegiance to any foreign sovereign, particularly the emperor of Germany; that the court relied on the truth and good faith of his representations and admitted him to citizenship; that the said representations were false, in that he did not in truth and in fact renounce his allegiance to the emperor of Germany, but falsely declared that he did so for the purpose of obtaining the rights, privileges, and protection of American citizenship, without assuming, or intending to assume, any of the duties thereof.

Annexed to the bill was an affidavit of one A. H. Rebentish, stating that on May 25, 1917, Kramer told him that he would do all he could against the United States; that any information he could get from soldiers at the aviation field he would get for him (Rebentish), same to be sent to Germany; that when this war was over he would either go to Germany or Mexico to live, as he did not care to live in this country any longer; that on May 31, 1917, Kramer stated to him that he could report to Germany that the aviation service of the United States did not amount to anything.

To this the defendant filed a pleading, which he termed an answer, but which was more in the nature of a general demurrer, and also a motion to dismiss the bill. These pleadings are too lengthy and diffuse to be briefly stated, and it is unnecessary to do so, in view of what subsequently transpired.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Without any action on the pleadings, the case went to trial, and the evidence of two witnesses, Secret Service agents, was heard on behalf of the government. One of these witnesses was the affiant, Rebentish, and the other was one Wyndelts. The evidence of these witnesses shows that defendant was repeatedly guilty of disloyal remarks similar to those set out in the affidavit above quoted; that he was keeper of a saloon near the United States aviation field at San Antonio; that it was his intention to return to Germany after the war; that his sympathy was entirely with Germany in the war, and he expected her to be successful; that he was in close accord with one Ludwig, a soldier in the United States army, stationed at the aviation field; that the witness Wyndelts visited Kramer's place on May 11, 1917, in company with said Ludwig, and Ludwig made certain disloyal remarks of which Kramer seemed to approve; that they sang German songs; that Ludwig would tell Kramer what was going on at the aviation field, and Kramer would question him about it; that on one occasion Wyndelts, Ludwig, another soldier, and Mr. and Mrs. Kramer were in the saloon, no one else being present, and Ludwig said they trusted Rebentish, who was posing as a German spy, and they said, "If he is a German spy, we will help him all we can." There was much more testimony to the same effect.

The government also introduced in evidence the order admitting the defendant to citizenship. The government then rested. The defendant introduced no evidence at all. There was nothing to discredit or impeach the testimony of these witnesses for the government. After the evidence was in, the defendant filed an amended motion to dismiss the bill of complaint, by which he waived his original motion. The amended motion was directed, not only to the sufficiency of the bill of complaint, but also to the competency and the sufficiency of the evidence offered in its support on the following grounds: That the bill showed no equity, because it did not allege that at the time and prior to the granting of the said certificate of citizenship defendant had any fraudulent intent not to renounce his allegiance to the German government; that defendant's citizenship could not be forfeited and canceled for acts done and words spoken by defendant subsequent to the date of the decree awarding him citizenship; that the evidence was wholly insufficient in equity to sustain a decree, because the disloyal statements were made long after defendant's citizenship was granted. Thereupon the court entered an order dismissing the bill, without a written opinion.

Hugh R. Robertson, U. S. Atty., of San Antonio, Tex.

Before WALKER, Circuit Judge, and FOSTER and GRUBB, District Judges.

FOSTER, District Judge (after stating the facts as above). In the absence of an opinion by the District Court, we assume the judgment rested upon the conclusion that evidence of acts of disloyalty occurring after defendant's admission to citizenship was not sufficient to show want of good faith and fraudulent intention at the time he was admitted.

The statute, under the provisions of which defendant was admitted to citizenship, provides that if a naturalized citizen returns to the country of his nativity, or goes to any other foreign country, and takes permanent residence therein, within five years after his certificate of citizenship is issued to him, it shall be prima facie evidence of lack of intention to become a permanent citizen at the time of filing his application for citizenship, in the absence of countervailing evidence. Section 15, Act June 29, 1906 (Comp. St. § 4374); Luria v. U. S., 231 U. S. 9, 34 Sup. Ct. 10, 58 L. Ed. 101. Congress thereby clearly indicated that subsequent acts of a naturalized citizen would be sufficient

evidence of his fraudulent intention at the time of his admission. If mere removal is sufficient evidence of fraud, why not subsequent acts of disloyalty, or statements indicating his want of allegiance? In the nature of things it is impossible for the government to make more than a cursory examination into the loyalty or the general character of the applicant for citizenship before admission, and the court must of necessity rely upon the good faith and truthfulness of the applicant when appearing before it and taking the oath of allegiance. In a criminal case, a man's intention may be judged by his acts. A conspiracy to defraud is usually proven by showing what the defendants did after the date upon which the conspiracy is alleged to have been formed, and the jury may consider such evidence in opposition to the testimony of defendant on the question of intention, and render a verdict of guilty upon it. Why not the same rule in a suit to cancel a certificate of naturalization?

American citizenship is a priceless possession, and one who seeks it by naturalization must do so in entire good faith, without any mental reservation whatever, and with the complete intention of yielding his absolute loyalty and allegiance to the country of his adoption. If he does not, he is guilty of fraud in obtaining his certificate of citizenship.

There can be no doubt that, had the defendant in this case been guilty of the utterances with which he is charged before his naturalization, and that fact had been known to the court, he would not have been admitted. The proof makes out a prima facie case of the disloyalty of the defendant, and shows his continuing allegiance to the German emperor. We think the court might well have rested a judgment of cancellation upon it, and it was error to dismiss the bill. U. S. v. Ellis, (C. C.) 185 Fed. 546; U. S. v. Olsson (D. C.) 196 Fed. 562; U. S. v. Wursterbarth (D. C.) 249 Fed. 908; U. S. v. Swelgin (D. C.) 254 Fed. 884.

In view of a new trial, we deem it well to say that it is settled that a suit to cancel a certificate of naturalization is a proceeding in equity. Luria v. U. S., supra. In this case the bill conforms to equity rule 25 (198 Fed. xxv, 115 C. C. A. xxv), contains a plain statement of the ultimate facts upon which the plaintiff asks relief, and is sufficient. The affidavit annexed to the bill shows, not only the authority, but the absolute duty, of the United States attorney to institute the proceedings under the provisions of the statute.

For the error in dismissing the bill the judgment is reversed, and the case remanded for further proceedings.

Reversed and remanded.