### SCHURMANN v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 3, 1920.)

No. 3422.

1. Aliens ⚡71½, New, vol. 7 Key-No. Series—Statute authorizes suit to cancel naturalization certificate issued under earlier laws.

Act June 29, 1906, § 15 (Comp. St. § 4374), authorizing United States district attorneys to institute proceedings to cancel certificates of citizenship for fraud or illegal procurement, applies, not only to certificates issued under that act, but to all certificates heretofore issued by any court exercising jurisdiction in naturalization proceedings under prior laws.

2. Aliens ⚡71½, New, vol. 7 Key-No. Series—Utterances of alien of German birth during war held to justify cancellation of certificate.

In a suit to cancel for fraud a certificate of citizenship, issued in 1904, to an alien of German birth, his utterances during the years 1916 and 1917, showing that his feelings were entirely on the side of Germany as against the United States and the other countries at war with Germany, *held* to show that he swore falsely that he absolutely and entirely renounced and abjured all allegiance and fidelity to the German government and its emperor.

Appeal from the District Court of the United States for the Territory of Hawaii; Horace W. Vaughan, Judge.

Suit by the United States against Frank H. Schurmann. From a decree canceling a certificate of naturalization, defendant appeals. Affirmed.

C. H. McBride, of Honolulu, T. H., and S. Joseph Theisen, of San Francisco, Cal., for appellant.

⚡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Annette Abbott Adams, U. S. Atty., and E. M. Leonard, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

HUNT, Circuit Judge. Schurmann appeals from a decree canceling a certificate of naturalization issued to him by the superior court of Los Angeles county, Cal., on December 17, 1904. The complaint alleges that the certificate of citizenship was procured by fraud, in that at the time Schurmann, a native of Germany, made the oath of allegiance, he falsely and fraudulently swore that he absolutely renounced and abjured all allegiance and fidelity to every foreign prince, potentate, state, or sovereignty whatever, and particularly to the Imperial German government and William II, German emperor, whereas Schurmann did not at the time and place stated, absolutely and entirely abjure and renounce all allegiance and fidelity to every foreign state or sovereignty whatever, particularly to the Imperial German government and to William II, German emperor, but did then and there fraudulently reserve and keep in whole or in part his allegiance and fidelity to the Imperial German government and to William II, German emperor.

[1] The suit is brought under the Act of Congress of June 29, 1906, c. 3592, § 15, 34 Stat. 596, 601 (Comp. St. § 4374), by which it is made the duty of the United States district attorneys, "upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured." The provisions of the section apply, not only to certificates of citizenship issued under the provisions of the act referred to, but to all certificates of citizenship which may have been issued heretofore by any court exercising jurisdiction in naturalization proceedings under prior laws. After demurrer had been overruled, Schurmann answered, denying all the material allegations as to fraud and alleging loyalty. Testimony was introduced on behalf of the government and Schurmann, and the court directed cancellation of the certificate of citizenship. Schurmann appealed, and relies upon assignments presenting the question of the sufficiency of the evidence and the applicability of the statute to the facts proven.

[2] In behalf of the United States there was abundant evidence that, before and after the declaration of war between the United States and Germany, Schurmann frequently praised the attitude of the Germans, defended the sinking of the Lusitania, said that he wanted to get over to Germany to be a surgeon in the German hospitals, anything Germany did was justified by her right to be supreme, said that America was wrong in entering the war, and that it was impossible to defeat Germany, advised against "waste" of money in buying Liberty Bonds, said he wanted to get into Mexico, and by

many other remarks indicated beyond any possible doubt that his feelings were entirely on the side of Germany as against the United States, as well as the other countries at war with Germany. Included in the record was a book of 142 pages written by Schurmann and published by him in August, 1916. The title is "The War as Seen Through German Eyes." After reading the book we may well approve of that portion of the opinion of the judge of the District Court, who said:

"The respondent admits it was propaganda, and that it was intended to create sentiment to prevent the United States from going to war with Germany. It is a bitter denunciation of all men and nations standing in the way of German success, and a laudation of all things German. It is full of falsehoods in regard to the origin, cause, and conduct of the war, and of false accusations against the allied nations and against the government and people of the United States and the President of the United States. * * * In it respondent complains against the United States and the President, because of the sale of arms and munitions by citizens of the United States to Great Britain and her allies, and complains against the President for 'killing' the resolutions offered in Congress to warn Americans to keep off the ships of the Allies, and he justifies and applauds the murdering of 114 Americans on board the Lusitania, when she was sunk in violation of law and in violation of the rights of every person on board. He accuses the owners of the Lusitania of being 'guilty of this terrible calamity,' because, as he charges, the vessel was laden with arms and ammunition, and they 'knew the submarines would lay for her'; and he denounces the United States government as guilty because it did not 'prevent any one from sailing on the doomed ship,' and he denounces 'the reckless passengers themselves, who disregarded the often repeated and earnest warnings, not only published by the German authorities, but also sent by the German authorities to each of these passengers individually.' But for the murderers who committed the crime he sings a hymn of praise, and says he would do as they did himself, if he were in command of a submarine and had the opportunity, and that he knows 'you' would do so also."

After war between the United States and Germany was declared Schurmann desired to continue to sell his book, but, fearful lest it might be unlawful so to do, asked the United States district attorney in Honolulu for an opinion whether the book could be lawfully sold. He was advised that it would be unlawful to circulate the book, but Schurmann was not satisfied, and wished the matter referred to the Attorney General of the United States. The question was so referred, and the Attorney General concurred in the judgment of the United States attorney.

We take the question at issue to be whether in 1904 Schurmann obtained his certificate of citizenship illegally or by false and fraudulent representations as alleged; and in arriving at decision of the question as stated we are mindful that the courts should be very careful to avoid depriving one of citizenship upon evidence which, although proving lack of allegiance at the time of the investigation, may not by relation establish that there was lack of true faith and allegiance at the time of the issuance of the certificate to the applicant. It may not be impossible for a man in perfect good faith to make renunciation of an allegiance to a foreign state and swear true faith and allegiance to the constitution of a new country, and yet after lapse of years, by reason of events which he could not have foreseen, honestly feel a change in his sense of obligation to the country of his adoption, and

a returning genuine wish to surrender his acquired obligations in order to return to his original political status. Analogy is found in this: Many young Americans went to Canada in 1916, and before April, 1917, and in order to fight for the cause of the allied countries against Germany expatriated themselves through patriotic motive and took oaths of allegiance to the king of England, and thereby became his subjects, and enlisted in his service; but after the United States entered the war with Germany, many of them obtained honorable discharge from the British service and under the act of Congress (40 Stat. pp. 340, 545 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4352, subd. 12]) resumed their citizenship in the United States and served in the American army.

Was the lower court justified in holding that Schurmann, by reason of his attitude and declarations and expressions during the years 1916 and 1917, before and after the United States was at war with Germany, swore falsely in 1904 when he declared that he absolutely and entirely renounced and abjured all allegiance and fidelity to the German government and emperor. Under the circumstances of the case, the only way of arriving at what the fidelity and allegiance of Schurmann were in December, 1904, is by trying out his attitude of mind and heart in the later years of 1916 and 1917, when, under then existing conditions men were specially aroused to give utterance to their real sentiments and to avow loyalty to one or another of the belligerent nations. Prior to 1916 his life seems to have been without special event indicative of patriotic feeling. But it was in the crucial times of 1917 that the respondent failed in the fundamental obligation to his oath of true faith and allegiance in 1904. Not only did he conduct himself prior to May and June, 1917, as already indicated, but after war was declared between the United States and Germany, upon being asked by an American whether it were possible that he would not defend the shores of the United States, respondent replied:

"Well, Allen, I will tell you. I have sworn allegiance to your flag or country; but I am going to tell you this much: That I didn't swear away my birthright. * * * And this is the crisis where every German, whether he is a Socialist or not, this is the time that it is up to him to defend the fatherland."

One who spoke in that way, and whose frequent expressions were so plainly against the United States and in favor of Germany, must have taken the oath of full faith and allegiance with a reserved determination, to be kept down, but nurtured, until a momentous time might come. In years, however, the time did come, and the criterion of original fraud must be the later conduct, which, in its relation to the earlier attitude, will furnish safe ground for judgment. United States v. Ness, 245 U. S. 319, 38 Sup. Ct. 118, 62 L. Ed. 321; Luria v. United States, 231 U. S. 9, 34 Sup. Ct. 10, 58 L. Ed. 101; Johannessen v. United States, 225 U. S. 227, 32 Sup. Ct. 613, 56 L. Ed. 1066; United States v. Ginsberg, 243 U. S. 472, 37 Sup. Ct. 422, 61 L. Ed. 853; United States v. Spohrer (C. C.) 175 Fed. 440; United States v. Wusterbarth (D. C.) 249 Fed. 908; United States v. Swel-

gin (D. C.) 254 Fed. 884; Grahl v. United States, 261 Fed. 487, —— C. C. A. ——; United States v. Kramer (C. C. A.) 262 Fed. 395.

Our conclusion is that the District Court was justified in canceling the certificate.

Affirmed.