## TURLEJ v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit. February 21, 1929.

No. 7918.

C. R. Ellery, of Cheyenne, Wyo. (D. A. Preston, of Rock Springs, Wyo., on the brief), for appellant.

T. Paul Wilcox, Asst. U. S. Atty., of Cheyenne, Wyo. (Albert D. Walton, U. S. Atty., of Cheyenne, Wyo., on the brief), for the United States.

Before BOOTH, and COTTERAL, Circuit Judges, and REEVES, District Judge.

REEVES, District Judge. From a decree canceling his certificate of naturalization, the defendant has appealed.

The action is under section 405, title 8, United States Code Annotated, relating to the subject of aliens and citizenship, and which prescribes the procedure for the cancellation of naturalization certificates. It is provided by this section that proceedings may be instituted "for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that

such certificate of citizenship was illegally procured."

The bill in the instant case seeks a cancellation on the sole ground of fraud. Pertinent allegations are as follows: "That said certificate of naturalization was obtained by said defendant fraudulently," and then follows a detail of circumstances. For instance, it was charged that the appellant fraudulently took oath and fraudulently induced his witnesses to take oath "that said defendant then and there was, and during the period of five years preceding said application had been, a person of good moral character, and during said period of five years had behaved as a man of good moral character, and that said defendant then and there was attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same, and that said defendant would support the Constitution of the United States and bear true faith and allegiance to the same."

The truth of the above was challenged in the bill, and it was further charged: "The said defendant did then and there intend to violate the provisions of the Constitution of the United States and the laws of the United States passed thereunder, and that said defendant, prior to the time he and his said witnesses took said oaths, as aforesaid, to wit, on the 25th day of April, A. D. 1920, in the district court of the Third judicial district of the state of Wyoming, sitting within and for the county of Lincoln, in said state, pleaded guilty to a charge then and there pending against him of the illegal and unlawful possession of intoxicating liquor, which said charge then and there also constituted a violation of the Constitution of the United States and the laws of the United States passed thereunder."

It was further alleged that at subsequent dates, to wit, December 8, 1922, the appellant was charged and convicted of violating the National Prohibition Act (27 USCA), and that on September 12, 1923, he was charged in a state court of Wyoming with having assaulted revenue officers of the United States, and that on November 12, 1923, he was convicted in a state court of Wyoming for the unlawful possession and illegal sale of intoxicating liquor.

The appellant by his answer denied that he had obtained his admission as a citizen by fraud. He admitted that he had violated the law pending his application for citizenship, but asserted that all facts in relation thereto had been communicated to the court at the hearing, and that same had been adjudicated and could not be retried. The cause was submitted to the court upon a stipulation as to the facts, with some additional oral testimony.

The appellant appeared before a Wyoming state court on March 26, 1921, on his petition for naturalization. Upon the hearing the Naturalization Examiner for the district challenged the qualification of the petitioner, "upon the ground that the said petitioner * * * was not then a person of good moral character, and had not since July 19, 1914, five years immediately preceding the filing of his petition, behaved at all times as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same, as required by law.

The appellant at that time made a full and complete statement of the fact of his violation of the laws of Wyoming, his plea of guilty, and the imposition of a fine of $200. His plea of guilty was entered on April 26, 1920. The infraction of the state law admittedly occurred on February 6, 1920. It was admitted that appellant was convicted in the United States District Court of Wyoming on December 8, 1922, for having possessed and sold intoxicating liquor in violation of the National Prohibition Act on August 3, 1922. It was also admitted that on September 12, 1923, the appellant entered a plea of guilty in a Wyoming state court to a charge of aggravated assault upon certain revenue officers of the national government. It was also admitted that on November 14, 1923, appellant entered a plea of guilty in a Wyoming state court for having made an unlawful sale of intoxicating liquor on August 25, 1923.

Objections were made by appellant's counsel to the introduction of the evidence of the several violations of law on the ground of immateriality. It was argued that the offense of February 6, 1920, was immaterial, because committed after the filing of his petition for naturalization, and that the other offenses were committed after the certificate of naturalization had been granted. The trial judge canceled appellant's certificate upon the ground that the assertion he was attached to the principles of the Constitution was not supported by his conduct.

█ 1. The contention made by appellant, that the affidavit upon which the action is predicated is insufficient, is without merit. The statute provides that "It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings,"

etc. Unquestionably the affidavit in this case showed "good cause," for the reason that it embodied all the facts alleged in the bill and set forth in the agreed statement of facts. Moreover, apt reference thereto is made in the allegations of the bill, and same was attached to the petition as an exhibit.

2. We must also hold that the bill was sufficient. It is charged, in substance, that the appellant asserted his attachment and devotion to the principles of the Constitution, whereas, at the time he did so, he intended to violate the provisions of the Constitution. This is the basis of the charge for fraud. Appellant's attachment to the Constitution was a condition precedent to his admission as a citizen, and if he was not so attached, and not "well disposed to the good order and happiness of the same," then his statement that he was so attached operated as a fraud upon the court, and a bill so alleging would state a cause of action.

3. In determining whether the bill was supported by the evidence, a preliminary survey of the law applicable to this character of cases should be made. Although the proceedings for admission to citizenship are judicial (Tutun v. United States, 270 U. S. 568, 46 S. Ct. 425, 70 L. Ed. 738), yet "they are not for the usual purpose of vindicating an existing right, but for the purpose of getting granted to an alien rights that do not yet exist" (Maney v. United States, No. 27, 278 U. S. 17, 49 S. Ct. 15, 73 L. Ed. ——, decided by the United States Supreme Court October 22, 1928). It follows that, this being a gift from the government, every condition attached to the grant "must be complied with strictly, as in other instances of government gifts." Maney v. United States, supra.

Among important conditions precedent to the admission of a citizen are "that during that time [five years preceding the hearing] he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same." Section 382, Title 8, United States Code Annotated.

It is not within the power of the agencies of the government to make the grant or gift of citizenship, if the applicant fails to meet these requirements. One refers to the matter of conduct or behavior on the part of the applicant, and the other to his mental attitude. It was undisputed that the appellant had been punished for violating the law subsequent to his declaration and prior to his hearing on his petition for citizenship, to wit, April 26, 1920,

11 months before he was admitted to citizenship.

It was further admitted that, after granting the certificate of citizenship, he violated the law on three separate occasions, although these violations occurred more than a year after the issuance of the certificate. These several criminal acts were either trespasses upon our national Constitution and statutes, or, as in one case, an aggravated assault upon government revenue officers. Moreover, three of such criminal acts directly violated the Constitution of the United States.

It is argued that this evidence should not be considered, because all such violations occurred after the application for citizenship was filed. The statute is very clear that the behavior of the appellant must be "as a man of good moral character" during the five years preceding the hearing on his petition, and that he must be "attached to the principles of the Constitution of the United States."

In re Bonner, 279 F. 789, the United States District Court of the District of Montana, held that the behavior of the petitioner continued to be a matter of inquiry clear up to the time of the hearing on his petition.

In Glaser v. United States, 289 F. 255, the Circuit Court of Appeals of the Seventh Circuit held that "subsequent acts and declarations of appellant were properly admitted as tending to disclose his state of mind when he signed his petition for naturalization."

It would appear, therefore, that evidence of behavior of the appellant, both before his certificate was granted and thereafter, would be competent as bearing on the question of his morals and his attachment to the Constitution. Neither can the contention be sustained that his admission to citizenship, with the facts of his previous infraction of the law before the court, is such an adjudication as to bar review. The decisions of the United States Supreme Court in Johannessen v. United States, 225 U. S. 227, 32 S. Ct. 613, 56 L. Ed. 1066, and United States v. Ginsberg, 243 U. S. 472, 37 S. Ct. 422, 61 L. Ed. 853, are complete answers.

In the former case the court said: "Sound reason, as we think, constrains us to deny to a certificate of naturalization, procured ex parte in the ordinary way, any conclusive effect as against the public. Such a certificate, including the 'judgment' upon which it is based, is in its essence an instrument granting political privileges, and open like other public grants to be revoked if and when it shall be found to have been unlawfully or fraudulently procured."

Moreover the court pertinently said: "An alien has no moral nor constitutional right to retain the privileges of citizenship if, by false evidence or the like, an imposition has been practiced upon the court, without which the certificate of citizenship could not and would not have been issued." As was well said by Chief Justice Parker in Foster v. Essex Bank, 16 Massachusetts, 245, 273 [8 Am. Dec. 135], 'there is no such thing as a vested right to do wrong.'"

In the Ginsberg Case, supra, the following language was employed: "An alien who seeks political rights as a member of this nation can rightfully obtain them only upon terms and conditions specified by Congress. Courts are without authority to sanction changes or modifications; their duty is rigidly to enforce the legislative will in respect of a matter so vital to the public welfare. * * * No alien has the slightest right to naturalization unless all statutory requirements are complied with; and every certificate of citizenship must be treated as granted upon condition that the government may challenge it as provided in section 15 [8 USCA § 405], and demand its cancellation unless issued in accordance with such requirements. If procured when prescribed qualifications have no existence in fact, it is illegally procured; a manifest mistake by the judge cannot supply these, nor render their existence non-essential."

Few cases can be found where applicants for citizenship have been admitted, if guilty of violating liquor laws within the five years preceding the hearing, and such cases have been severely criticized by the courts. This was true even before the adoption of the Eighteenth Amendment as a part of our national Constitution.

In re Trum, 199 F. 361, Judge Van Valkenburgh, then District Judge of the Western District of Missouri, denied an application for citizenship because the applicant had been convicted of violating the Kansas prohibitory law more than four years before the hearing. The court said that the act of the applicant "was that of the lawbreaker—not of one well disposed to the good order and happiness flowing from attachment to the principles of the Constitution of the United States."

In re Bonner, supra, citizenship was denied because the applicant had violated the liquor law. It was there pointed out that the only case where such an offense was not considered sufficient to debar the applicant was In re Hopp (D. C.) 179 F. 561, and that that case has been criticized, but never followed. The court said; "Furthermore, it is not the usual police regulation violated. It is an act of Congress to administer the new principle of the federal Constitution, prohibition. All this is new and known of all men. Hence violation of it is consciously and deliberately in subversion of the principles of the Constitution, and to which it must be proven the applicant is attached, before admitting him to citizenship. * * * It is not enough to be attached to some of the principles of the Constitution. There must be proof of attachment to all of them, including that of prohibition. Violating this law breeds disorder and unhappiness, and in circumstances here indicates the offender is not 'well disposed to the good order and happiness' of nation and people."

In the three cases of In re Nagy, In re Raio, and In re Phillips, reported in 3 F. (2d) 77, 78, and 79, respectively, the District Court for the Southern District of Texas at Houston, subscribed to the above views.

■ Measured by the authorities, the state court made a mistake in granting appellant citizenship. Appellant did not possess the requisite qualifications, and the court was so advised. However, the court was induced to make such mistake by the frankness of the appellant in admitting his offense, and his avowal, under oath, that he was then attached to the principles of the Constitution. The facts, however, discredit his assertion. He was not qualified for citizenship, but deceived the court into believing that he was. Such deception operated as a fraud upon the court, and this deception and fraud were evidenced by his subsequent, as well as prior, conduct.

The trial judge was right in canceling his certificate of naturalization, and his decree should be affirmed.

It is so ordered.

BOOTH, Circuit Judge (dissenting). I dissent. The suit is one to cancel a naturalization certificate on account of fraud. In suits of such character the evidence must be clear, unequivocal, and convincing. United States v. Budd, 144 U. S. 154, 12 S. Ct. 575, 36 L. Ed. 384; United States v. Knight (D. C.) 291 F. 129, affirmed (C. C. A.) 299 F. 571. The evidence in the case at bar does not, in my opinion, measure up to the required standard. Even conceding that acts of the appellant committed after the date of his naturalization were competent evidence to prove his state of mind on that date, yet the probative value of such acts naturally diminishes as the length of time increases. The acts of appellant here in question took place

from 1½ to 2½ years after he was naturalized.

The presumption that the state of his mind when he was naturalized was the same as when he committed the acts in question, is, in my opinion, too weak to serve as a basis upon which to predicate fraud. The majority opinion seems to recognize, although rather reluctantly, the weakness of this presumption. Accordingly an attempt is made to buttress the evidence as to the subsequent acts of appellant by evidence of the fact that 13 months before he was naturalized he committed an offense against the prohibition laws of the state, which was also an offense against the National Prohibition Act.

Let it be conceded that evidence of this prior act also was competent and relevant on the issue of the state of mind of appellant on the date of his naturalization. Yet here again it seems to me that the presumption that his state of mind at the time of this prior act continued, and was the same on the date of his naturalization, is too weak to serve as a basis upon which to predicate fraud.

Furthermore, the foregoing does not portray the whole situation. The record shows that at the time of appellant's naturalization he admitted to the state court this prior offense; that he also disclosed to the state court the facts and circumstances surrounding and extenuating this prior offense. The state court, with full knowledge of the facts, admitted appellant to citizenship. What the facts and circumstances were which surrounded the prior offense we do not know. They do not appear from the record before us. But that they were important and of weight would seem to be indicated by the fact of the entry of judgment by the state court, and by the presumption of regularity and validity which attaches to the judgment.

The grave objection to the position of the majority of the court as shown by their opinion, lies, it seems to me, in this: That full weight is accorded to the prior offense as a bare, unexplained fact, notwithstanding that it did not stand as a bare, unexplained fact in the state court. The giving of such unaffected and undiminished weight to the fact of the prior offense seems to be hardly fair to that court or to the appellant, and leads to a result of doubtful validity. This court, though aware that it is without knowledge of some presumably important and relevant facts in the case, yet reaches the conclusion that the state court has been defrauded, and that the appellant has been guilty of the fraud.

The decree of cancellation, under these circumstances, will, I fear, lay itself open to the charge that its real basis is not fraud committed on the state court, but the offenses committed by appellant subsequent to his naturalization. Such a ground for cancellation does not exist at present. If such a ground be desirable, it should be created by congressional rather than judicial legislation.