## UNITED STATES v. MICKLEY.

### No. 8763.

District Court, E. D. Michigan, S. D.

May 6, 1942.

John C. Lehr, U. S. Dist. Atty., and Louis M. Hopping, Asst. U. S. Dist. Atty., both of Detroit, Mich., for plaintiff.

William J. Lehmann, of Detroit, Mich., for defendant.

LEDERLE, District Judge.

1. The petitioner herein brought this action pursuant to Section 338(a) of the Nationality Act of 1940, 8 U.S.C.A. § 738(a), seeking cancellation of certificate of citizenship #3,972,976 issued to Herbert Mickley, respondent herein, by this Court on December 9, 1935. Service was had upon the respondent in accordance with the terms of the Act and he appeared by counsel. An order for a pre-trial hearing in accordance with Rule 16, Rules of Civil Procedure, 28 U.S.C.A. following section 723c, was entered and served on April 8, 1942, and the pre-trial hearing was held on April 15, 1942, at which time the case was set for trial on May 4, 1942. On this latter date a hearing was held in open court.

2. It is the claim of the petitioner that the certificate of citizenship was fraudulently and illegally procured in that

"(a) His allegations in said petition for naturalization, that he was attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States, and his statements in his oath of allegiance that he would support and defend the Constitution and laws of the United States against all enemies, foreign and domestic, and bear true faith and allegiance to same were willfully and knowingly false;

"(b) He took the oath of allegiance to the United States with a mental reservation; and

"(c) He did not behave as a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States during the period required by law."

3. The respondent admitted that he received the certificate as set forth in the petition, but denied that he did so fraudulently or illegally.

4. The respondent, a former subject of Germany, arrived at the port of New York on September 12, 1928. His passport indicated that he was born on November 1, 1908. His petition for naturalization was filed on September 3, 1935. This petition was signed by the respondent and duly acknowledged before a deputy clerk. In this sworn petition he gave his date of birth as November 1, 1908. He has resided in the city of Detroit since 1928, during which time he has been employed in various occupations. For the past three years he has been employed by the General Motors Corporation in Fisher Body Plant #37, located at the corner of Milwaukee and Hastings Streets, Detroit. He is unmarried and rooms at 3800 Burns Avenue in the city of Detroit. Aside from joining a local lodge, he has formed no attachments in this community.

Respondent has never exercised the right to vote and there is no showing that he ever assumed any of the other obligations of an American citizen.

5. On October 16, 1940, he appeared before Local Draft Board No. 11 in the city of Detroit for the purpose of registration.

He signed a registration card, which stated he was born on November 1, 1906, and that he was a German citizen. The 7th question and answer on the registration card appear as follows:

Q. "Name of person who will always know your address. A. No one."

The Registrar made the following notation on the registration card: "Some of his answers evasive. Citizenship doubtful."

As is the custom in doubtful cases the Registrar reported the matter to the Chief Registrar, who made and attached to the registration card a notation on this date reading in part as follows:

"Attention Draft Board  Would recommend this registrant be called in as soon as possible to ascertain just what his attitude is toward his citizenship and to tie him down in some way to a record, as to place of business, relatives. Says he was never weighed, very evasive about relatives and place of business. Speaks very broken English, and did not talk or answer questions asked him. He says only relatives are in Germany."

6. In the regular course of the business of Local Board No. 11, a selective service questionnaire was mailed to the respondent on April 29, 1941, notifying him to return it on or before May 5, 1941. He did not return it. Thereafter the matter was referred to the Federal Bureau of Investigation, and respondent was again notified. In response to this notice he appeared at the Draft Board on July 3, 1941, and stated that he had never received the original questionnaire, although it was mailed to him at the same address. He was given another questionnaire and directed to return it by July 8, 1941. This questionnaire was filled out in pencil in the respondent's handwriting and returned to the board on July 8, 1941, unsigned. He failed to give his Social Security number on the questionnaire. He also omitted to answer the question concerning his physical condition and the question regarding his citizenship. He listed his average weekly earnings as fifty-five dollars. On page 7 of the questionnaire respondent stated that he believed he should be placed in class 4 which, according to instructions on page 1, "includes those whose induction is deferred by law and those unfit for military service." In explanation of this statement regarding classification he added in his handwriting, "I am German and will not fight against my people." At the trial he testified that his physical and mental condition were good, and that he had never consulted a physician.

In compliance with an order he appeared before the full Draft Board on July 14, 1941, and, although he did not specifically refuse to answer questions, in many cases his response was merely a shrug of the shoulders and his attitude was extremely uncooperative. At this Draft Board hearing respondent stated that he had no friends or relatives in this country and consequently had no reason to fight for it. Whereupon, a board member asked him why he didn't return to Germany if he felt this way, and respondent's answer was: "I would if I could, but I can't now."

7. The respondent also stated to one of his fellow employees that he wouldn't fight for the United States because he did not want to fight against his brothers. He stated to another fellow employee, "Once a German, always a German," and further stated to this employee that he was going to take a long vacation this summer because whatever money he earned, the Government would take away from him in taxes anyway. In a statement made to an Immigration Inspector on August 23, 1941, he attempted to explain the statement in his questionnaire, "I am German and will not fight against my people," by limiting it to his own relatives. However, he testified that he had not heard from his relatives since about 1934 and he did not know whether any of them are alive or in the German army.

8. The only evidence offered on behalf of the respondent was his own testimony. He gave no reasonable explanation for his conduct and statements. In general, his testimony was evasive and contradictory, and his attitude in court was similar to that described by the Draft Board members and employees. Counsel for the respondent pointed to respondent's purchase of defense bonds as evidence of his allegiance to this country. In this connection it is significant that this purchase was made about April 17, 1942, in connection with a drive being put on at his place of employment and after he was involved in these proceedings.

9. The evidence is convincing that when respondent thought it would serve his purpose best to claim United States citizenship, he did so. He did this for the purpose of securing employment and continuing in his employment. On the other hand, when it appeared that he might be able to avoid

military service, he claimed to be a German citizen and misrepresented his age. His conduct and the statements that he has made clearly indicate that his allegiance has always been to his mother country rather than to the United States. They also establish that at the time he took an oath of allegiance and was granted a citizenship certificate he had a mental reservation that he would not "support and defend the Constitution and laws of the United States against all enemies, foreign and domestic, and bear true faith and allegiance to the same" if the obligation conflicted with his loyalty to Germany. Consequently, his oath that he took the citizenship obligation without mental reservation or purpose of evasion was false and fraudulent.

### Conclusions of Law.

1. This action was properly brought under the Nationality Act of 1940 and this Court has jurisdiction to determine the matters therein raised. Sections 338 and 301, Nationality Act of 1940.

2. From its founding the United States has been the haven of refuge for oppressed people from many lands. This beneficent attitude toward well-meaning immigrants has been mutually beneficial to America and to the immigrants. Many of our finest citizens were born in foreign countries. The loyalty and patriotism of naturalized citizens are seldom brought into question, but in view of the large number of naturalized citizens it is not strange that occasionally one unworthy of the confidence of our people should by fraud receive a naturalization certificate. When such a case arises it calls for prompt and vigorous action on the part of the public authorities.

The admission to citizenship is a serious matter. The applicant is required to take the oath of allegiance without qualification or mental reservation. The right of an alien to acquire citizenship is purely statutory and citizenship should not be granted unless there has been a strict compliance with these requirements. United ed States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302; Luria v. United States, 231 U.S. 9, 34 S.Ct. 10, 58 L.Ed. 101; United States v. Kramer, 5 Cir., 1919, 262 F. 395; United States v. Mansour, D.C., 170 F. 671, affirmed without opinion 1912, 226 U.S. 604, 33 S.Ct. 217, 57 L.Ed. 378; United States v. Ellis, C.C., 185 F. 546; United States v. Wursterbarth, D.C., 249 F. 908; United States v. Darmer, D.C., 249 F. 989; United States v. Swelgin, D.C., 254 F. 884; United States v. Stuppiello, D.C., 260 F. 483; United States v. Herberger, D.C., 272 F. 278.

3. If this respondent's mental attitude toward the United States had been known to the Court at the time he applied for citizenship, the certificate would not have been granted. It therefore follows that the respondent perpetrated a fraud upon the Court and the certificate is clearly invalid and should be cancelled on the ground that it was illegally procured. Schurmann v. United States, 9 Cir., 264 F. 917, reported with annotations in 18 A.L.R. 1182.

4. This respondent may not have fully realized at the time he received his certificate that his loyalty to Germany would prevent his becoming a loyal American citizen, but this does not make it any the less a legal fraud for him to have failed to disclose his true, though latent, feeling in the matter. On the basis of this record it is clear that the respondent did not intend to renounce his allegiance to his mother country and therefore the oath was false. United States v. Herberger, supra; Glaser v. United States, 7 Cir., 289 F. 255; Turlej v. United States, 8 Cir., 31 F.2d 696; Rothman v. United States, 6 Cir., 18 F.2d 577.

5. A judgment shall be entered cancelling said naturalization certificate #3,-972,976 issued to Herbert Mickley on December 9, 1935, and directing that the Clerk of this Court transmit forthwith a certified copy of this order to the Commissioner of Naturalization, at Washington, D. C.