### UNITED STATES v. SCHUCHHARDT.

#### Civil Action No. 164.

District Court, N. D. Indiana, Fort Wayne Division.

April 7, 1943.

568

See, also, 43 F.Supp. 876.

Alexander M. Campbell, U. S. Atty., and Luther M. Swygert, Asst. U. S. Atty., both of Fort Wayne, Ind., for plaintiff.

C. Byron Hayes and Otto E. Grant, both of Fort Wayne, Ind., for defendant.

DUFFY, District Judge.

This is a proceeding under Sec. 338 of the Nationality Act of 1940, 8 U.S.C.A. § 738, to revoke and set aside, on the ground of fraud, the order of the Circuit Court of Allen County, Indiana, dated June 10, 1930, admitting the defendant to citizenship, and to cancel the certificate of naturalization which was at that time issued.

The complaint alleges in substance that the defendant, John Paul Schuchhardt, filed his declaration of intention on December 7, 1923, setting forth the oath taken; that he filed his verified petition for naturalization on November 19, 1929; that he took the required oath of allegiance on June 10, 1930; and that, relying upon the truth and good faith of the representations of the defendant, as contained in his declaration of intention and in his petition for naturalization and his oath of allegiance, the United States of America issued a certificate of naturalization to him.

It is further alleged that all of such representations were false and fraudulent, in that the defendant was "not in fact attached to the principles of the Constitution of the United States at the time of the filing thereof nor during the five years prior thereto, in that he did not in good faith intend to renounce absolutely and forever all allegiance and fidelity to the German Empire of which he was then a subject but in fact intended to retain allegiance and fidelity to the said German Empire"; and "in that he did not in fact renounce and abjure all allegiance and fidelity to the said German Empire, in that he did not in fact intend to support the Constitution and laws of the United States of America against all enemies, foreign and domestic, and in that he did not in fact intend to bear true faith and allegiance to the same, but in fact did intend to remain a subject of the German Empire and to maintain his allegiance thereto."

The defendant has denied these allegations. At the trial he contended he took the oath of allegiance in good faith, but that for several years prior to the entrance of this country into the present war he was influenced by the teachings and doctrines set forth in the editorials of the "News Sentinel", a daily newspaper printed in Fort Wayne, Indiana, which in turn often reprinted cartoons and editorials from the "Chicago Tribune", and that statements made by him very often were similar to those appearing in those newspapers and in published statements and speeches made by certain well known citizens of this country.

The issue to be settled in this case requires a determination of the state of mind of the defendant on June 10, 1930, the date when he took the oath of allegiance entitling him to become a citizen of this nation. The burden of proof is on the government to establish the affirmative of its contentions by more than a mere preponderance of the evidence. Fraud is alleged and the government must establish such fraud by clear and satisfactory proof. However, it is well established that the state of a person's mind on a certain date may be proved by his subsequent actions and statements. Schurmann v. United States, 9 Cir., 264 F. 917, 18 A.L.R. 1182, appeal dismissed 257 U.S. 621, 42 S.Ct. 185, 66 L.Ed. 401; Glaser v. United States, 7 Cir., 289 F. 255, certiorari denied 263 U. S. 700, 44 S.Ct. 6, 68 L.Ed. 513; United States v. Baumgartner, D.C., 47 F.Supp. 622; United States v. Bergmann, D.C., 47 F.Supp. 765.

John Paul Schuchhardt came to the United States in 1923. Shortly after ar-

riving in this country he found employment at a satisfactory wage—undoubtedly much higher than he would have received in Germany. He purchased a home. He formed friendships. He joined the Maenner Or Society. The natural thing would be that as the years went by the ties with his fatherland would become less binding and his loyalty to this country would increase. After becoming a citizen of the United States in 1930, Schuchhardt made a trip to Germany, consuming some three months. Between the time of his return to this country and the beginning of 1937 there was nothing which occurred to bring his inner feelings as to his regard for this nation out into the open. But in 1937 the international situation grew more tense. Hitler's plan to permit the whole world to bask in the sunlight of his beneficence became more and more evident. One of the formulae to be relied upon was the "softening up" of the intended victims, especially "from within", by so-called fifth column activities.

The government has clearly proved in this case that the setup and organization of the German-American Bund was along the same lines as the National Socialist Party in Germany. The leadership principle of all authority being vested in the leader was a well known tenet of the National Socialist Party, as well as of the German-American Bund and its predecessor organizations.

The political and economic principles of the National Socialist Party of Germany are diametrically opposed to those of American democracy. The Nazis consider dictatorship as the ideal form of government and, as one of the former Bund leaders testified on this trial, they sneered at and ridiculed democracies and democratic institutions. The guarantee of individual liberty is foreign to the concept of the totalitarian state.

In early 1937 when the attitude and war preparations of Germany became more menacing, John Paul Schuchhardt joined the Fort Wayne branch of the German-American Bund. He served as treasurer for at least two years. He read and was well acquainted with many of the Bund "commands" which came from Bund headquarters. For several years he read the official Bund weekly newspaper. He had some personal contact with national Bund leaders Kuhn and Kunze. He attended Bund meetings at Fort Wayne. He attended other meetings sponsored by the Bund at Chicago and South Bend. He examined and knew the contents of at least one of the Bund yearbooks. His picture was taken with other Bund officers, to be published in a Bund yearbook. He collected money for subscriptions to the Bund newspaper. In view of his many contacts, I do not believe Schuchhardt's contention that he did not know the real purpose of the Bund. It is well established by the evidence in this case that the Bund was an auxiliary of the National Socialist Party in Germany. Schuchhardt could not have been ignorant of the close tie-up. The evidence discloses that the National Socialist Party provided schooling in Germany and bestowed honors upon high American Bund officers. The Bund was the medium through which the doctrines of National Socialism were to be spread in this country.

During the years when the defendant was active in the Bund, he was heard to say: "My oath of allegiance does not mean a thing to me—just a scrap of paper." He adopted the Nazi tactics of threatening reprisals to those who argued against him. He recounted with apparent glee that we would have a free country over here when Hitler arrived on our shores, and he took joy in contemplating the super-race which would result when the storm troopers came over to this country and bred American girls. He cut a swastika on his tools in the factory. He boasted of getting the truth by shortwave from Germany, and claimed one could not believe American newspapers.

I am aware that on the witness stand Schuchhardt has denied or qualified most of the statements just mentioned. On the other hand he admits falsifying to the F. B. I. agents, and he deceived his close friend, Frey, who had been the best man at his wedding. He has not hesitated to disregard the truth when it suited his own purposes. I prefer to believe the various witnesses who testified as to the defendant's statements heretofore quoted, rather than defendant's denials which were often hedged and qualified.

From 1937 up to the time this nation entered the war, there is no question but that the defendant was not attached to the principles of the Constitution of the United States. He clearly demonstrated his devotion to the principles of Hitler and the German Reich. It is true that after we entered the war he talked but little. This,

however, may be explained by his own testimony on the trial: "When war was declared, I was told to shut up and I did."

When the defendant approved and extolled the theories of the National Socialist Party of Germany, he could not at the same time bear true faith and allegiance to the Constitution and the laws of the United States. One cannot divide his allegiance between Nazi doctrines and those of American democracy, for they are as wide apart as the Poles. Even a contortionist cannot at one time ride two horses going in opposite directions.

American citizenship is a precious privilege. It should not lightly be taken away. The only matter which has given me concern in this case is whether the government has met the required burden of proof in establishing that on June 10, 1930, the defendant's state of mind was the same as in 1937–1941. The evidence discloses no specific statements or actions of the defendant during the six years following the taking of his oath which throw any light on the defendant's real sentiment toward our Constitution and form of government. No fault has been found in the quality or volume of his work in a factory working on war orders.

■■ To enable an alien to obtain citizenship, he must be "attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." 8 U.S.C.A. § 707. This section of the Nationality Code was intended to exclude from citizenship persons who did not believe in the form of government of the United States. In re Van Laeken, D.C., 22 F.Supp. 145. If an applicant for citizenship conceals the fact that he is not attached to the principles of the Constitution of the United States and is not well disposed to the good order and happiness of the United States, or if he obtains a certificate of naturalization in violation of any of the other requirements of the statute, a fraud is committed, for which the certificate may be cancelled. 8 U.S.C.A., § 738; Maney v. United States, 278 U.S. 17, 49 S.Ct. 15, 73 L.Ed. 156; Glaser v. United States, 7 Cir., 289 F. 255; Turlej v. United States, 8 Cir., 31 F.2d 696.

■■ The granting of citizenship to an alien is a privilege. He cannot claim it as a matter of right. Therefore, all the requirements prescribed by law must be fully met and complied with by the applicant. As was said by the court in United States v. Kramer, 5 Cir., 262 F. 395, 397: "American citizenship is a priceless possession, and one who seeks it by naturalization must do so in entire good faith, without any mental reservation whatever, and with the complete intention of yielding his absolute loyalty and allegiance to the country of his adoption. If he does not, he is guilty of fraud in obtaining his certificate of citizenship."

The court, in United States v. Herberger, D.C., 272 F. 278, 291, observed: "Loyalty or allegiance is, necessarily, of slow growth; therefore, somewhat involuntary, not fully subject to the will." I am convinced that the sentiments of the defendant, which lay dormant for some six years, were the same on June 10, 1930, as they were at the times hereinbefore specifically referred to when defendant so clearly showed his allegiance was not to this government. In fact the testimony discloses that defendant told two F. B. I. agents that his attitude and sentiments had not changed since 1930. At least in this one respect he told the truth, although he probably desired to convey the impression to the agents that he had been loyal at all times since 1930.

■ I conclude, therefore, that the defendant practiced a fraud when he obtained his certificate of naturalization, and that judgment should go for the plaintiff.