### UNITED STATES v. RITZEN.

Civ. A. No. 881.

District Court, S. D. Texas, Houston Division.

May 19, 1943.

Douglas W. McGregor, U. S. Atty., and Miles L. Moss, Asst. U. S. Atty., both of Houston, Tex., for plaintiff.

Merrill & Scott and William H. Scott, all of Houston, Tex., for defendant.

HANNAY, District Judge.

This is a suit filed by the United States of America, as plaintiff, under the Nationality Act of 1940, 8 U.S.C.A. § 501 et seq., for the purpose of canceling the naturalization certificate of the defendant, John Henry Ritzen, born Johannes Heinrich Wilhelm Ritzen. Plaintiff alleges that the defendant was, prior to the 12th day of April, 1933, a native and citizen of Germany, and that he entered the United States on or about January 16, 1926, and that on or about the 11th day of November, 1932, he filed his petition for naturalization in the United States District Court for the Southern District of Texas, under the oath required by law, and that on the 12th day of April, 1933, the defendant took the oath of allegiance and thereupon certificate of naturalization was issued to him.

Defendant was born in Germany, where he was reared and educated. He remained in Germany until on or about 1900, when he went to New Guinea, then a German colony, where he remained until the beginning of World War No. 1 in 1914. While in New Guinea, he worked for private interests and for the German government. He acquired interests in New Guinea, which he claims were subsequently confiscated by the British. At the time of the beginning of World War. No. 1, defendant had just married a German girl, and had returned to New Guinea with his bride. (He is still married to this wife, who is still a German citizen, and as a result of this union three children were born,—all three being born in Germany.) Immediately after the beginning of hostilities in 1914, the British and Australians took over New Guinea, and the defendant and his wife were sent back, via America, to Germany. Soon after the defendant returned to Germany, he entered the armed forces of Germany, where he remained until February, 1919. Defendant and his family came to the United States in Janu-

ary, 1926, and to Houston, Texas, in February, 1927, where he has resided continuously since.

It is claimed by the government in its petition that the defendant received his certificate of naturalization through illegality and fraud, which charges are strongly denied by the defendant. A great amount of testimony was introduced bearing upon the actions and attitude of the defendant since his arrival in America. The government has introduced testimony to the effect that the defendant, from the beginning of the rise of Hitler in Germany, agreed with Hitler's utterances, actions, doctrines and methods, and frequently, proudly and enthusiastically approved and loudly applauded same. This means, as was well said by Judge Otis in the case of United States v. Baumgartner, D.C., 47 F.Supp. 622: "Hitler's principles are diametrically opposed to those of the United States. Hitler believes in dictatorial rule, not in government 'of the people, by the people and for the people.' Hitler despises and has destroyed, where he could, representative government. Hitler asserts the Nazis are superior to other men, entitled to superior privileges, that America's doctrine that 'all men are created equal' is the raving of idiots. Hitler, by his tools, puts to the torch cathedrals, synagogues and churches; desecrates the lodges of Free Masons; burns libraries and books; imprisons priests, rabbis, clergymen; tortures the old, the weak, the young, if they are not of his socalled 'superior' race; robs helpless individuals of minorities of their property, sends them penniless into exile, murders hundreds of thousands of them in cold blood. Hitler enslaves millions, tramples under foot peoples who were free, who asked only that they might live in freedom; perverts and debases the minds and souls of young men and young women. Baumgartner has approved in his own handwriting, either expressly or by inference, all these infamies. He defends them. He says that Hitler's end justifies Hitler's means."

The defendant was in deep sympathy with and in constant communication with Germany and things German as his opportunities would permit, meeting the German ships at the port here in Houston just as often as possible; seeing and being with the officers and crews of such vessels, exchanging information and courtesies with such persons; he read, approved and distributed German literature of a propaganda nature, which had for its purpose the teaching of the doctrines of Hitler and the hatred of Jews and the British. He listened to speeches and information from Germany by short wave radio; read German newspapers constantly, and arranged parties of German organizations, where the Hitler salute was given, and German war songs sung. He joined the Steel Helmets (Stahlhelm) in 1932, became an officer thereof, and remained a member of such organization until 1938, when the order was dissolved by Hitler's order, and he then became a member of the Kyffhausser Bund, and remained a member of that organization until it was dissolved at the request of the Dies Committee in 1940. These two organizations were both unquestionably pro-German and un-American. At the time he applied for and was granted naturalization, he did not tell the examiner of his membership in the Stahlhelm. He retained, secreted and apparently treasured pictures, phonographic records, and mementoes of such a nature as to be of probable future help to Germany by propaganda use in this country.

In addition to the defendant's attitude and demeanor on the witness stand, which was observed closely by the court, the following are a few of the statements made and things done by the defendant, as testified to by certain of the witnesses or by defendant himself, which indicate clearly the state of mind and heart of the defendant prior to and since his making application for and obtaining certificate of naturalization: "Can never be more than half-hearted citizen (of the United States) and will always have sympathy for old country (Germany)"; that he frequently spoke of "your country", meaning America and the United States, and "my country" meaning Germany; that he constantly referred to Germany as "home"; that he made the statement that this government (United States) would and should be overthrown by a revolution and that a dictatorship was needed in the United States and would come—this is very similar to the language used in the recent case of United States of America v. John Paul Schuchhardt, D.C., 49 F.Supp. 567, and is in accordance with the Nazi doctrine, and, as is well stated in the case last referred to: "One cannot divide his allegiance between Nazi doctrines and those of American democracy, for they are as wide apart as the Poles. Even a contortionist cannot at

one time ride two horses going in opposite directions."

While on the witness stand, Ritzen, when asked concerning a statement in certain literature admittedly circulated by him (which statement the court considers as the most foul libel he has ever heard of), attempted to defend such libel. This of itself clearly demonstrates that the defendant is presently of the Hitler mental attitude that any means, however vile, are correct to use in order to obtain a desired end.

*Conclusions of Law.*

■ The court concludes from the evidence admitted in this case that there is not a reasonable doubt that the certificate of naturalization granted to the defendant herein was obtained by him fraudulently and illegally and through the use of an oath falsely taken; and that the defendant, John Henry Ritzen, at the time the certificate of naturalization was granted to him had not in good faith renounced all allegiance and fidelity to the German Reich and did not intend to support the Constitution and laws of the United States, and was not attached to the principles of the United States and well disposed to the good order and happiness of the United States. The court bases his findings of law in this case by applying to the testimony of the witnesses herein the law well established in the cases of United States of America v. Baumgartner, D.C., 47 F.Supp. 622, 623; United States of America v. Bergmann, D.C., 47 F.Supp. 765; Schurmann v. United States, 9 Cir., 264 F. 917, 18 A.L.R. 1182; United States of America v. Herberger, ·D.C., 272 F. 278; United States of America v. Ebell, D.C., 44 F.Supp. 43; United States of America v. Murray, D.C., 48 F.Supp. 920; United States of America v. Wursterbarth, D.C., 249 F. 908; United States of America v. Wezel, D.C., 49 F.Supp. 16.

■ All of the above cases hold in effect that naturalization is a privilege and is granted only upon strict compliance with the conditions laid down by Congress under the Nationality Act of 1940, § 301 et seq., 8 U.S.C.A. § 701 et seq., and that where, through concealment, a certificate of naturalization is obtained in violation of statutory requirements, there is fraud, for which the certificate may be canceled. The United States of America require of a naturalized citizen constant and undivided loyalty at all times and under all circumstances. In this requirement, the defendant has failed beyond any reasonable doubt. It, therefore, follows and it is hereby ordered, adjudged and decreed that the order of the court dated April 12, 1933, admitting John Henry Ritzen, be and the same is hereby canceled and set aside; that the said John Henry Ritzen be and is hereby directed to surrender his certificate of naturalization to the clerk of the court, and that the said John Henry Ritzen be and he is restrained and enjoined from claiming any benefits whatsoever under his certificate of naturalization, and that the costs herein be and are hereby assessed against the defendant.