**UNITED STATES ex rel. HARRINGTON v. SCHLOTFELDT, District Director of Immigration, et al.**

**UNITED STATES v. KRAUSE.**

Nos. 8217, 8221.

Circuit Court of Appeals, Seventh Circuit.

June 30, 1943.

936

Joseph T. Harrington, of Chicago, Ill., for appellant.

John Peter Lulinski, J. Albert Woll, Austin Hall, and J. P. Lulinski, all of Chicago, Ill., for appellee.

Before SPARKS and KERNER, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

The first appeal here considered, No. 8221, is from a decree entered September 22, 1942, revoking appellant's citizenship, and an order, entered December 29, 1942, denying his motion to vacate that decree for asserted lack of jurisdiction on the part of the court to enter it. The order of December 29 also denied appellant's motions for the appointment of a guardian ad litem to protect the alleged interests of his three-year old son whose derivative citizenship fell with that of his father; the issuance of subpoenae duces tecum directed to the heads of the State Department, Selective Service System of Tulsa, Oklahoma, and the Federal Bureau of Investigation; and leave to file an amended motion to vacate the decree. Appellant also asserts error in the action of the District Court in denying these motions.

The first issue raised by this appeal relates to the jurisdiction of the court to enter the decree, the objection being made that appellant was not a resident of the district in which the suit was brought. As proof of his non-residence, he relies upon an affidavit filed by the Government, sworn to July 30, 1942, showing that he had registered under the Selective Service Act in ·Oklahoma, although he was not a member of the armed forces. The record shows that service was had by publication beginning May 28, 1942. On July 28, an attorney filed his appearance for appellant; on July 31, substitution of attorneys was permitted, and on that day, the substituted attorney obtained leave to file answer to appellee's motion for judgment by default within ten days. Thereafter, on August 10, 1942, appellant filed answer containing the following, inter alia: "And he admits that his residence is now at Chicago, Illinois, within the Northern District of Illinois and within the jurisdiction of this court." Thereafter trial was had, with no question ever raised as to appellant's residence.

The case upon which appellant relies to support his contention of no jurisdiction, United States v. Sotis, 7 Cir., 131 F.2d 783, presented an entirely different issue. There a former citizen whose citizenship had been revoked by default decree, service having been had by publication, came in three years later, but within one month after he obtained knowledge of the default decree, with a motion to vacate it. Because the purported service by publication did not strictly follow the statutory requirements, this court held that the court did not acquire jurisdiction thereby, hence its decree was invalid and subject to being vacated, irrespective of lapse of time after its entry. It is obvious that this case presents no authority for appellant here. Instead of objecting to the jurisdiction, he voluntarily submitted to it. His active participation in the trial without objection thereafter renders any possible irregularities respecting service of process or venue merely an academic question. A personal privilege respecting venue may be asserted or waived at the election of the defendant. Neirbo Co. v. Bethlehem Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437; Freeman v. Bee Co., 63 S.Ct. 1146, 87 L.Ed. ——, decided by the Supreme Court, June 1, 1943. Certainly appellant waived such privilege. Hence there is no question as to the jurisdiction of the District Court to hear the cause.

Appellee urges that the appeal is improperly before us in view of the fact that notice of it was filed on December 28, from a decree entered September 22. The court permitted the filing of a motion to vacate the decree on December 19, ordered the Government to answer, and set the matter for hearing. Where such motion to vacate is permitted to be filed and taken under consideration prior to the expiration of the period allowed for taking an appeal, we are of the opinion that it suspends such period, and that notice of appeal duly filed after disposition of the motion is filed in time. Cf. Zimmern v. United States, 298 U.S. 167, 56 S.Ct. 706, 80 L.Ed. 1118; Wayne Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557. We think the Federal Rules of Civil Procedure, Nos. 6, 59 and 60, 28 U.S.C.A. following section 723c do not require a contrary ruling.

The bill to revoke appellant's citizenship, brought under section 15 of the Act of June 29, 1906, 8 U.S.C.A. § 405, alleged that it was illegally obtained by fraudulent renunciation of allegiance to the German Reich of which he had theretofore been a subject, and false representations of attachment to the principles of the Constitution of the United States. The court found the charges sustained by the evidence and accordingly cancelled the certificate of citizenship. Appellant contends that the evidence

failed to sustain the charge of perjury and fraud.

The certificate of naturalization in question was issued on October 2, 1929, on a petition showing the applicant's arrival in the United States, January 11, 1924, and declaration of his intention to become a citizen, January 25, 1924.

Appellant was a native of Germany who had served in the German Army in 1915. He was a graduate of a German Polytechnical school, holding a degree as an electrical engineer. After he came to this country he obtained work in his field, being employed at Northwestern University as an instrument maker in the Department of Physics from 1926 to 1935. In 1936 he was employed as European agent for an American company making electronic and mechanical devices. Thereafter he made various trips to Europe, and in 1938 he started a business in Switzerland. In 1941, he returned to this country, intending to remain only a short time, and travelling on a round-trip ticket. However, at this time, appellant was unable to obtain a passport so had to remain in the United States. He was out of this country the greater part of the four years from 1937 to 1941.

In support of its charge of perjury in appellant's declaration of attachment to the principles of the Constitution of the United States and renunciation of allegiance to the German Reich, the Government introduced the evidence of a number of friends, neighbors and fellow employees as to his conduct and statements made by him in later years. The testimony of these witnesses proves quite conclusively that in these later years at least, he was not attached to the Government of the United States, and the principles of its Constitution. Many testified that he had told them that he regretted having become an American citizen. He repeatedly asserted the superiority of the German system, political, industrial, social, and educational, making invidious comparisons in those respects with the American system. In 1938 and 1939 he was often heard to make derogatory statements as to this country and its form of government, asserting the need of the German

form of government and that the German people should and would rule the world. His anti-Semitic bias was reflected in his conversations with several of the witnesses. As early as 1933 or 1934 he and his wife had taught their small daughter, American born, to give the Nazi salute, "Heil Hitler."

This type of conduct and expression indicates a degree of admiration for and devotion to the German form of Government utterly incompatible with the undivided loyalty and allegiance required of American citizens. Certainly his allegiance to our Government and the principles of its Constitution can not have been very deep or sincere if it could so easily be supplanted within a few years by an ideology which is the complete antithesis of everything for which our Constitution stands. That the conduct and expression evidencing such ideology occurred years after the issuance of the certificate of naturalization to appellant is no bar to the cancellation of that certificate. The oath of allegiance and the renunciation of former allegiance must be made without mental reservation. If it appear subsequently that the maker fails in allegiance, fidelity or faith, it may be fairly presumed that he did not absolutely and entirely renounce his former allegiance, and this presumption is all the stronger when the period which has elapsed since the oath is longer. United States v. Kuhn, D. C., 49 F.Supp. 407. It is well settled that intent at the time of naturalization may be shown by subsequent acts and declarations.[1] As the Court of Appeals for the Ninth Circuit said in Schurmann v. United States, 264 F. 917, 918, 18 A.L.R. 1182, determining that the District Court was justified in holding that a naturalized citizen who by reason of his attitude and declarations and expressions in 1916 and 1917, before and after the United States was at war with Germany, swore falsely in 1904 when he declared that he absolutely and entirely renounced all allegiance to the German government,

"* * Under the circumstances of the case, the only way of arriving at what the fidelity and allegiance of Schurmann were in December, 1904, is by trying out his atti-

[1] Luria v. United States, 231 U.S. 9, 34 S.Ct. 10, 58 L.Ed. 101; United States v. Kramer, 5 Cir., 262 F. 395; Turlej v. United States, 8 Cir., 31 F.2d 696; Glaser v. United States, 7 Cir., 289 F. 255; Schurmann v. United States, 9 Cir., 264 F. 917, 18 A.L.R. 1182; United States v. Wursterbarth, D.C., 249 F. 908; United States v. Darmer, D.C., 249 F. 989; United States v. Herberger, D.C., 272 F. 278; United States v. Mickley, D.C., 44 F.Supp. 735; United States v. Kuhn, D.C., 49 F.Supp. 407; Annotation, 18 A.L.R. 1185.

tude of mind and heart in the later years of 1916 and 1917, when, under then existing conditions men were specially aroused to give utterance to their real sentiments and to avow loyalty to one or another of the belligerent nations. Prior to 1916 his life seems to have been without special event indicative of patriotic feeling. But it was in the crucial times of 1917 that the respondent failed in the fundamental obligation to his oath of true faith and allegiance in 1904. * * (After war was declared he stated) 'And this is the crisis where every German, * * * it is up to him to defend the fatherland.'

"One who spoke in that way, and whose frequent expressions were so plainly against the United States and in favor of Germany, must have taken the oath of full faith and allegiance with a reserved determination, to be kept down, but nurtured, until a momentous time might come. In years, however, the time did come, and the criterion of original fraud must be the later conduct, which, in its relation to the earlier attitude, will furnish safe ground for judgment."

 We are convinced that the District Court had ample evidence before it in support of its declaration, "After listening carefully to all the evidence and the law, I am convinced that the conduct, actions, statements and expressions of the defendant for the many years clearly indicate that at the time his citizenship was granted he never meant to renounce the land of his birth and therefore did not take the oath in good faith." The court was not bound to accept as conclusive appellant's own testimony as to his feelings and intentions, particularly when that testimony was in sharp contrast to the evidence of many witnesses as to his conduct and expressions over a period of years before and after the United States became involved in war with the country of his inadequately renounced allegiance. Obviously the court was not impressed by appellant's assertion of his efforts to enlist in the Coast Guard in August, 1942, several months after the current proceeding had been started to revoke his citizenship. We are of the opinion that the record amply supports the decree of the District Court.

Moreover, we are convinced that this decision is not in conflict with that of the Supreme Court in the case, Schneiderman v. United States, 63 S.Ct. 1333, 87 L.Ed. ——, announced June 21. There the majority of the Court held that the Government had not sustained the burden of proving that Schneiderman was not attached to the principles of the Constitution of the United States when his certificate of citizenship issued, ruling that very active membership and participation in an organization alleged but not admitted by the majority of the members of the Court to advocate the overthrow of the Government by force and violence did not constitute such opposition to the principles of the Constitution as to justify holding that a member could not truthfully take the oath to uphold the principles of that Constitution. It stresses the fact that the Government relied solely upon evidence relating to the Party, and introduced none as to Schneiderman himself apart from his party activities. "Apart from his membership in the League and the Party, the record is barren of any conduct or statement on petitioner's part which indicates in the slightest that he believed in and advocated the employment of force and violence, instead of peaceful persuasion, as a means of attaining political ends." The Court recognizes that citizenship can be revoked "on legal grounds," thereby upholding the validity of section 15, 8 U.S. C.A. § 738, which provides for such revocation. It assumes without deciding "that * * * a certificate of naturalization can be set aside under § 15 as 'illegally procured' because the finding as to attachment would later seem to be erroneous. * * *" We are convinced that in the case at bar the Government did sustain the burden of proving that appellant's conduct and expression in later years were opposed to the principles of the Constitution. Applying the long line of cases which the Court does not overrule by its decision in the Schneiderman case, we are further convinced that such conduct and expression may be relied upon to show that the oath of allegiance was taken with such mental reservations as to render it wholly nugatory, and that being the case, that the certificate of citizenship issued in reliance thereon was illegally procured.

 Appellant further contends that the court erred in refusing to appoint a guardian ad litem to protect the interests of his three-year old son born in Germany after appellant had obtained his certificate of naturalization. There was no error in the court's action. The child was not a party to the suit. His rights, if any, were derived solely from the status of his father.

Section 15, 8 U.S.C.A. § 738, provides in effect, that the validity of derivative rights of a wife or minor child shall not be affected by revocation of the certificate of citizenship of the husband or father, except where such revocation is for fraud. In such case where fraud is in issue, as here, we are of the opinion that any derivative rights stemming from the certificate of naturalization involved, must rise or fall solely on the basis of the rights of the husband or parent from whom they stem, and there are no rights to be protected independently by guardian ad litem. Cases relied upon to support the contention that such a guardian should have been appointed[2] all relate to situations where the minor child was a necessary party to the suit, hence entitled to have his rights independently protected.

 Appellant further urges error in the refusal of the court to permit the filing of an amended motion to vacate the decree, and the denial of his petition for the issuance of subpoenae duces tecum directed to the heads of the State Department, Selective Service System of Tulsa, Oklahoma, and the Federal Bureau of Investigation. We find no error in the disposition by the court of these applications. Moreover, the denial of such motions is not appealable.

■ The second appeal here presented, No. 8217, is from the dismissal of a petition for habeas corpus, and arises out of proceedings subsequent to the entry of the decree heretofore discussed. That decree was entered on September 22, 1942, and it appears from the petition and answer that on September 29, appellant was taken into custody under a Presidential Warrant, being detained until November 16 in the custody of the Director of Immigration of the United States Department of Justice for the District of Chicago, and since that time, in the custody of the Commanding Officer of the Alien Internment Camp, at Sparta, Wisconsin. The petition for the writ was filed on December 30, 1942.

The District Judge to whom the petition was presented ordered that the writ issue, returnable before the Judge before whom the proceeding to cancel the naturalization certificate was heard. After hearing, the latter Judge dismissed the petition, stating orally that he did so, first because he was convinced that he had no jurisdiction, and further, that the relator was legally in the custody of the Attorney General through his agent. He therefore remanded the relator to the custody of the Commanding Officer of the Internment Camp.

We are convinced that only one question is presented to us by this appeal, and that is the question of jurisdiction. It must be noted that when application was made to a judge of the District Court for the Northern District of Illinois for the issuance of the writ of habeas corpus, the relator was detained in custody in a camp in Sparta, Wisconsin. It is well settled that writs of habeas corpus issued by the District Court do not run outside the district. The statute empowering judges to issue the writ provides, " * * * the several judges * * * of the district courts, *within their respective jurisdictions*, shall have power to grant writs of habeas corpus * * *." (Our italics.) 28 U.S.C.A. § 452.

A similar question arose in United States v. Day, 3 Cir., 50 F.2d 816, where application was made to a District Judge for the district of New Jersey, for habeas corpus for an alien held on Ellis Island within the territorial confines of the Southern District of New York. The New Jersey District Court issued the writ, and the Commissioner in charge of Ellis Island obeyed it, producing the relator, but at the same time challenging the jurisdiction of the court, which, upon hearing, dismissed the writ. The Court of Appeals for the Third Circuit held that the special appearance of the respondent and his qualified production of the relator did not cure the lack of jurisdiction, hence affirmed the dismissal by the District Court. See, also, Ex parte Yee Hick Ho, D.C., 33 F.2d 360; United States ex rel. Nazaretian v. Tod, D.C., 291 F. 665; Ex parte Gouyet, D.C., 175 F. 230; United States ex rel. Rubin v. Powell, D.C., 1 F. R.D. 644.

Since the petition for writ of habeas corpus was rightly dismissed, there is no occasion for us to consider other questions sought to be raised by the appeal.

The decree and order in Cause No. 8221, relating to appellant's certificate of citizenship, are affirmed. The order in No. 8217, dismissing the petition for writ of habeas corpus, is likewise affirmed.

---

2 Waechter v. Industrial Comm., 367 Ill. 256, 11 N.E.2d 378; Tymony v. Tymony, 331 Ill. 420, 163 N.E. 393; Ridenour v. Johns, 258 Ill.App. 48.