Interim Decision #1440

## MATTER OF PSALIDAS

### In Deportation Proceedings

### A-12783325

*Decided by Board February 25, 1965*

(1) Personal notice to defendant in Greece of intention to cancel his United
States citizenship pursuant to section 15, Act of June 29, 1906, forwarded
via the American Consul, Athens, was not vitiated by the Consul's remail-
ing, which did not interrupt transit of notice which commenced with the
registered mailing in New York and ended when received and signed for
by defendant, and was adequate under both the federal statute and the
laws of New York because it served reasonably to inform defendant of
the legal steps which were being taken against him and afforded him an
opportunity to appear and to defend his citizenship.

(2) Despite lapse of 5½ months between date of order for publication and
date publication commenced, judgment of U. S. District Court, New York,
September 28, 1940, cancelling defendant's naturalization for presumptive
fraud under section 15, Act of June 29, 1906, is not void for lack of juris-
diction since the order of publication required compliance with Rules 50
and 52, N. Y. Rules of Civil Practice, but made no provision for compliance
with Rule 51 which provided that publication commence within 3 months
of date of order; any defect in publication of notice was an irregularity
rather than a jurisdictional defect and was corrected when personal notice
was given to defendant by registered mail.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonim-
migrant—Remained longer.

Respondent is 27 years old, single, male, a native of Greece. He
was admitted to the United States at New York on or about July 4,
1962, as a nonimmigrant visitor for pleasure. Thereafter, he was
authorized to remain until September 15, 1962. He has not departed,
and no application has been made to extend his stay beyond Sep-
tember 15, 1962. He claims United States citizenship through the
naturalization of his father in New York before his birth. His
claim to citizenship has been rejected by the Immigration and Nat-
uralization Service. The special inquiry officer found that respon-

76

dent has established good moral character and the financial ability to qualify for voluntary departure, and granted respondent voluntary departure with an automatic order of deportation if he fails to depart. Respondent appeals from that decision. The appeal will be dismissed.

Respondent's father, Panos Psalidas, was naturalized in the United States District Court for the Southern District of New York on April 13, 1931. He lived in this country from 1914 until 1935. On August 28, 1922, respondent's parents were married in New York. Panos Psalidas joined his wife in Greece on January 7, 1935. Respondent was born in Greece on December 14, 1936. It is said that Panos intended only to visit in Greece, and then to return with his wife and family to the United States. However, respondent's mother died in 1937, and Panos never returned. Respondent remained in Greece with his father from the time of his birth until his departure for the United States in 1962.

On June 29, 1938, the United States Attorney filed a petition in the United States District Court for the Southern District of New York to cancel the certificate of citizenship granted Panos Psalidas. The petition states that Panos Psalidas' last place of residence in this country was New York, within the jurisdiction of the court. This action is authorized by section 15 of the Act of June 29, 1906 (former 8 U.S.C. 405), which establishes a rebuttable statutory presumption that the naturalization was procured by fraud if within five years after the issuance of the certificate of naturalization the naturalized person should take permanent residence in any foreign country.[1] On January 20, 1938, the United States Vice Consul at

---

[1] Act of June 29, 1906: Sec. 15. That it shall be the duty of the United States district attorneys for the respective districts or the Commissioner or Deputy Commissioner of Immigation and Naturalization upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured. In any such proceedings the party holding the certificate of citizenship alleged to have been fraudulently or illegally procured shall have sixty days personal notice in which to make answer to the petition of the United States; and if the holder of such certificate be absent from the United States or from the district in which he last had his residence, such notice shall be given by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought.

If any alien who shall have secured a certificate of citizenship under the provisions of this Act shall, within five years after the issuance of such

Athens, Greece executed a certificate of fraudulent naturalization of Panos Psalidas based on the fact that within five years after obtaining a certificate of naturalization he took up permanent residence in ·Greece, thereby demonstrating that at the time he became a citizen he did not intend to remain permanently in the United States.

On September 28, 1940, a default judgment revoking Panos Psalidas' naturalization was entered in the United States District Court for the Southern District of New York. The court ordered that the' certificate of citizenship ·issued to him be cancelled, set aside, and surrendered. On December 2, 1940, the surrendered certificate of citizenship was forwarded to the Immigration and Naturalization Service. It is well established that when a grant of citizenship was extinguished by judicial cancellation for presumptive fraud prior to January 13, 1941,² any status dependent upon that citizenship also was extinguished. Thefore, respondent lost his claim to United States citizenship based on his relationship to Panos Psalidas, if the judgment of denaturalization was valid and binding.

.In 1955 respondent was an applicant for a fourth preference visa. He served in the Greek Army from October 1958 to June 1960, and he voted at national elections in Greece in 1956 and 1960. We do not reach the question of his possible expatriation by these acts, in view of our finding that respondent has had no claim to United States citizenship since his father's citizenship was cancelled on September 28, 1940.

Respondent contends that the court order cancelling his father's citizenship was improperly issued, in that the court was without jur-

certificate, return to the country of his nativity, or go· to any other foreign country, and take permanent residence therein, it shall be considered prima facie evidence of a lack of intention on the part of such alien to become a permanent citizen ·of the United States at the time of filing his application for citizenship, and, in the absence .of countervailing evidence, it shall be sufficient in the proper proceeding to authorize the cancelation of his certificate of citizenship as fraudulent, and the diplomatic and consular officers of the United States in foreign countries shall from time to time, through the Department of State, furnish the Department of Justice with the names of those ·within their respective jurisdictions who have such certificates of citizenship and who have taken permanent residence in the country of their nativity, or in any other foreign country, and such statements, duly certified, shall be admissible in evidence in all courts in proceedings· to cancel certificates of citizenship.

² The Nationality Act of 1940, Section 338(d), 8 USCA 738(d), made a distinction between cancellation for actual fraud and cancellation for presumptive fraud, but this change came too late to be of aid to respondent. *Battaglino v. Marshall;* 172 F. 2d 979 (2d Cir. 1949); *Manha v. Brownell,* 146 F. Supp. 411 (N.D. Cal. 1956).

isdiction by reason of its failure to follow the procedure prescribed for giving notice in such actions. Respondent refers to the language of section 15 of the Act of June 29, 1906, "* * * and if the holder of such certificate be absent from the United States or from the district in which he last had his residence, such notice shall be given by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought." The New York law governing service by publication is set forth in Rules 50,[3] 51,[4] and 52[5] of the Rules of Civil Practice. Respondent contends that the Government failed to comply with the legal requirements for obtaining jurisdiction over Panos Psalidas by publication under the New York rules, in that (1) the mailing to Panos Psalidas did not occur on or before the first date of publication, as required by Rule 50, and (2) the first publication did not take place within three months after the order of publication was granted on December 7, 1938. Respondent contends, therefore, that the denaturalization decree entered on September 28,

---

[3] Rule 50. Order for service of summons by publication; contents. The order for service of a summons by publication must direct that such service be made by publication thereof in two newspapers, in the English language, designated in the order as most likely to give notice to the defendant to be served, for a specified time, not less than once in each of six successive weeks. It must also contain either a direction that on or before the day of the first publication the plaintiff deposit in a post-office, or in any post-office box regularly maintained by the government of the United States, one or more sets of copies of the summons, complaint and order, and of the notice required by rule fifty-two, each set properly inclosed in a postpaid wrapper addressed to the defendant to be served, and if the defendant be an infant, addressed to his father, mother or guardian or a person having the care or control of him or with whom he resides at a place specified in the order; or a statement that the court or judge, being satisfied by the affidavits on which the order was granted that with reasonable diligence the plaintiff cannot ascertain a place or places where such defendant, or any such person, probably would receive matter transmitted through the post-office, dispenses with the deposit of any papers therein . . . .

[4] Rule 51. Time of publication; when service complete. The first publication of a summons in each newspaper designated in the order therefor, must be made within three months after the order is granted. For the purpose of reckoning the time within which the defendant must appear or answer, service by publication is complete on the forty-second day after the day of first publication.

[5] Rule 52. Papers to be filed on service by publication or without the state; notice to defendant. If service be made by publication, or without the state in lieu thereof, the summons, complaint and order and the papers on which the order was made must be filed with the clerk on or before the day of the first publication or the day of such personal service.

1940, was absolutely void and may be attacked collaterally at any time.

The record establishes that an affidavit of mailing was made by an employee in the office of the United States Attorney for the Southern District of New York stating that the required papers were mailed to the Vice Consul of the United States at Athens, Greece, on May 13, 1940. There is also an affidavit from the United States Consul at Athens, Greece, stating that he, in turn,. mailed the papers to the "defendant" (Panos Psalidas) on June 8, 1940, by registered mail to his residence in Greece. The papers were received by Panos Psalidas, as evidenced by a postal return receipt bearing his signature. The required papers consisted of a copy of the writ of subpoena, petition and notice required by law, and a copy of the order for publication. It is conceded that the writ of subpoena was published for the first time in two New York newspapers, the New. York Law Journal and the New York Post, on May 16, 1940, and was published thereafter for six successive weeks.

The special inquiry officer held (1) that the Government met all the requirements set forth in the court's order for service by publication; (2) that even though there may not have been exact compliance with the statutes, the court was not deprived of jurisdiction, and the denaturalization decree is not void *ab initio*; (3) that there was strict compliance with the order for service by publication and substantial compliance with the New York statutes providing for service by publication; (4) that an administrative agency may not disregard a judgement of a United States court when there is an issue as to whether the court had jurisdiction over the defendant; (5) that respondent may attack the decree cancelling his father's citizenship, but that the attack must be in the court which issued the decree.

The Board concludes that respondent's father received personal notice under the federal statute. This law provides no specific method of service, as pointed out in *United States v. Tuteur, infra*, and *United States v. Cardillo, infra*, and the best method would seem to be the one that conforms to the local pattern and is successful. We conclude that respondent's father also received notice by publication under the New York law. Respondent complains that the mailing to Panos Psalidas via the consul at Athens prior to the commencement of publication was not a timely mailing to the defendant himself. The fact that the necessary documents were remailed by the consul to the party at his home did not interrupt their transit which commenced with the registered mailing in New York and ended when he received them, and signed the return receipt. The Board holds also that the lapse of five and a half months be-

tween the court's order of publication and the date publication was commenced was not a fatal defect in service. To hold otherwise, to quote from *United States* v. *Nicolay, infra*, "would surely be most technical."

Respondent relies heavily in his briefs and in oral argument on our decision, *Matter of C—*, 6 I. & N. Dec. 366 (November 18, 1954), wherein the respondent's father had only 29 days' notice. We found that this period was inadequate under both the federal statute (providing for 60 days' personal notice) and the law of Illinois (providing for 30 days' notice to an absentee defendant). The complaint against C—'s father was filed on October 1, 1935. The decree of the court purporting to cancel the citizenship of that person was dated October 28, 1935. We relied on *Yamashita* v. *Hinkle*, 260 U.S. 199 (1922), and on *U.S. ex rel. Lapides* v. *Watkins*, 165 F.2d 1017 (2d Cir. 1948) and found that we may, if necessary, reject a judicial decree granting or cancelling citizenship, if the judgement of the court is void on its face. We held that service by publication must comply with the statute authorizing such service. The Government had used a "consent and waiver" signed by C— (in lieu of formal notice or service), which has been disapproved by the courts in several cases, and which was not used in the instant case. This is a signal distinction between C— and the instant case.

There is no doubt that a certificate of citizenship may be revoked by default when the procedure prescribed by Congress has been strictly followed. We will refer again to the use of the waiver of notice and consent to judgement. The facts in the instant matter take it outside the scope of *Matter of C—, supra*, and the cases cited therein. We have reviewed the cases wherein judgements of denaturalization were entered by default and were later attacked for procedural defects. We agree with counsel that the principal issue is whether or not there was adequate notice to Panos Psalidas. Most of the cases fit into a rationale, as follows:

A. If there was adequate notice or service of process by the Government upon the denaturalized citizen so that the court had jurisdiction:

1. The party claiming citizenship is bound by the rule that he must respond or appeal promptly, and he cannot use a dilatory motion to reopen in lieu of a defense undertaken, or an appeal taken, within a reasonable time. *Sunal* v. *Large*, 67 S.Ct. 1588, 332 U.S. 174 (1947); *Title* v. *United States*, 263 F.2d 28 (9th Cir., 1959); *Zurini* v. *United States*, 189 F.2d 722 (8th Cir., 1951); *United States* v. *Kung*, 163 F.2d 344

(2d Cir., 1947); *United States* v. *Cardillo*, 135 F. Supp. 798 (D.C. Pa., 1955).

2. The party claiming citizenship is bound by the rule that a derivative citizen has no standing to attack a denaturalization judgement taken prior to the Nationality Act of 1940 by default against a parent who did not defend. *Battaglino* v. *Marshall*, 172 F.2d 979 (2d Cir., 1949), cert. den. 338 U.S. 829; *Krause* v. *United States*, 136 F.2d 935 (7th Cir., 1943), cert. den. 327 U.S. 781, 66 S.Ct. 680 (1946); *U.S. ex rel. Harrington* v. *Schlotfeldt*, 136 F.2d 935 (7th Cir., 1943); *Rosenberg* v. *United States*, 60 F.2d 475 (3d Cir., 1932), cert. den. 287 U.S. 645; *In re Naturalization of Estevez*, 189 F..Supp. 705 (D.C. Pa., 1960); *Manha* v. *Brownell*, 146 F. Supp. 411 (N.D. Cal., 1956); *Antonacci* v. *Brownell*, 133 F. Supp. 201 (S.D. Ill., 1955); *Sanders* v. *Clark, et al*, 76 F. Supp. 489 (D.C. Pa., 1948).

B. If there was *not* adequate notice or service of process by the Government upon the denaturalized person, so that the court issuing the denaturalization order had no jurisdiction:

1. It makes no difference that a long period of time has elapsed during which the denaturalized person has done nothing to protect his citizenship or to protest the proceedings. *Stennerman* v. *Brownell*, 204 F.2d 336 (9th Cir., 1953); *United States* v. *Kiriaze*, 172 F.2d 1000 (5th Cir., 1949); *U.S. ex rel. Stabler* v. *Watkins*, 168 F.2d 883 (2d Cir., 1947); *U.S. ex rel. Volpe* v. *Jordan*, 161 F.2d 390 (7th Cir., 1948); *United States* v. *Sotis*, 131 F.2d 783 (7th Cir., 1942); *United States* v. *Milana*, 148 F. Supp. 152 (E.D. Mich., 1957).

2. It makes no difference that the party attacking the denaturalization judgement collaterally is claiming citizenship as a derivative. *United States* v. *Nicolay*, 148 F.2d 608 (2d Cir., 1945); *Laranjo* v. *Brownell*, 126 F. Supp., 370 (N.D. Cal., 1954).

There are numerous cases in all the state reports concerning the subject of adequate service, as typified by *Ferguson* v. *Crawford*, 70 N.Y. 253 (N.Y. Ct. App., 1877), cited by respondent. We limit our discussion principally to cases concerning denaturalization, because (1) the case arises under federal statute; (2) the courts tend to treat citizenship matters differently from estate and property controversies; and (3) the local cases often turn on a rule of practice, or a statute delineating procedure for special situations, or in a particular court.

82

*Respondent's father received adequate "personal notice" under the Act of June 29, 1906.*

The statute (section 15, Act of June 29, 1906) gives the defendant. in revocation proceedings "sixty days' personal notice," and if he is absent from the United States "such notice shall be given by publica-·tion in the manner provided for the service of summons by publication . . . by the laws of the State . . . where such suit is brought." The cases differ widely in interpreting the notice and service require-ments. What constituted adequate notice in one case is found to be noncompliance in another. In *United States* v. *Tuteur,* 215 F.2d 415. (7th Cir., 1954), the order against defendant was not entered · by default, and the case was remanded for trial of questions of fact. The court found, however, that respondent had been given adequate notice. The circuit court was asked to review a summary judgement cancelling respondent's certificate of naturalization, wherein the respondent contended that the district court did not acquire juris-diction over him because he did not have sixty days' "personal notice" of the action. It was stipulated that service "was effected" on the wife of respondent by a Deputy United States Marshal. · The · district court found that notice and manner of service was sufficient to meet the requirement of the statute. The circuit court said:

. The controlling question, therefore, is what kind of notice is required by the term "personal notice". Giving to the words their common place meaning personal notice is communication of. information, orally or in writing, ac-cording to the circumstances, directly to the person affected or to be charged. 66 C.J.S., Notice, par. 8, p. 641.

Notice in its legal sense may be defined as information concerning a fact, actually communicated to a person by an authorized person, or actually derived by him from a proper source. Notice is regarded in law as actual when the person sought to be affected by it knows thereby of the existence of . the particular fact in question. 66 C.J.S., Notice, par. 2, pp. 635, 637.

    \*      \*      \*      \*      \*      \*      \*

The statute makes no reference to *service* of the required notice and indeed the method of giving the required notice is not specified by the statute. If, as a matter of fact, personal notice to the respondent results from any method which petitioner uses, the purpose of the statutory provision has been met and no rights of the respondent have been infringed.

The court recites that the undisputed facts of record sustain the trial judge's finding that the notice was sufficient, and that the record establishes that the respondent *personally and actually re-ceived notice of the pending petition.*

In the cases cited under paragraph A(1) and (2) above, the Gov-ernment's notice and service procedure was found adequate. In *Zurini* v. *United States,* 189. F.2d 722 (8th Cir. 1951), Zurini came into court in 1948 declaring that he had no knowledge that his decree

of naturalization had been cancelled in 1935. The court said, "It is not conceivable to us that a district court, except in the most extraordinary circumstances, could be charged with an abuse of discretion in refusing to vacate, after the lapse of more than fourteen years, a judgement which it had jurisdiction to enter." The court considered that the notice given Zurini by registered mail through the American Consulate in Italy and the publication, copies of which were mailed to him, were adequate to advise him that the United States was seeking the cancellation of his citizenship, and that he was charged with knowledge of the proceeding.

In *United States v. Cardillo*, 135 F. Supp. 798 (D.C. Pa., 1955), the Government petitioned to revoke a certificate of naturalization. The sole issue was whether jurisdiction existed when service was made by registered mail and publication, and the proper address of the respondent was not set forth. As in *Tuteur*, the court observed that the statute did not specify any form of notice or process, by registered mail or otherwise, quoted from Rule 4 of the Federal Rules of Civil Procedure[*] and declared that the Act must be liberally construed, requiring merely that respondent have personal notice 60 days prior to hearing. That actual notice was effected was evidenced by the registered mail receipt which was signed either by the respondent or by some person on behalf of respondent. There was also publication once a week for three successive weeks in two publications, as ordered by the court. The court said that no one should be deprived of his citizenship without the strongest cloak of protection, but "a corresponding duty rests upon such person to come forth with his defense where actual notice has been given him and receipt of such notice has been exemplified by his own writing or writing by an authenticated representative in his behalf." The court stated that the publication contained an erroneous address which could have resulted in confusion, and therefore the publication of notice was defective, but the defect was cured when registered notice was given the respondent.

*Antonacci v. Brownell*, 133 F. Supp. 201 (S.D. Ill., 1955), is similar on its facts to the instant case. The court held that the suit by

---

[*]Rule 4. Process

\* \* \* \* \* \* \*

(d) Summons: Personal Service \* \* \*

(7) Upon a defendant \* \* \* is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.

the son of a naturalized citizen whose certificate of naturalization has been cancelled in a proceeding under 8 U.S.C. 405 (1927) is a collateral attack, and all legal presumptions arise in favor of the decree of denaturalization; the findings of fact contained in the denaturalization decree with respect to the questions of jurisdiction, the service of process and the publication of notice, are conclusive, and such findings may not be attacked by evidence not found in the record. A finding in the denaturalization decree that there was due notice of the filing of the suit by publication three times as required by law is also conclusive, although the record contained no certificate that publication was had during three consecutive weeks; a presumption arises that the court heard evidence with respect to the publication of notice, and based its findings thereon, and it is not necessary that the proof of publication be by affidavit of the publisher.

We find that *Zurini, Cardillo, Antonacci*, and *Tuteur*, all *supra*, and other cases cited above under A(1) and (2), are adequate authority to support a conclusion that Panos Psalidas had sufficient notice by registered mail through the consul at Athens.

*Some cases holding that there was not adequate notice arose from war conditions.*

Several cases holding that there was noncompliance with the requirements for notice are unsatisfactory as authorities, because they were litigated during hostilities. After the emergency has passed, the courts tend to compensate the individual for the severity of the war-time legislation or the inconvenience he has experienced. In this category comes *Klapprott* v. *United States*, 335 U.S. 601 (1949), wherein a Bund member was in jail for several years on criminal charges and continuously during denaturalization proceedings. In *United States* v. *Nicolay*, 148 F.2d 608 (2d Cir., 1945), the court found the order of publication and other requirements were adequate and stated, "On the face of the record there was jurisdiction to cancel Nicolay's certificate of naturalization." However, Nicolay was in Germany, and because of the war he could not return to testify or even to supply a deposition. It was held that until communication with him became possible, so that he could appear if he desired, he has not been given his day in court.

*The form of "consent and waiver" in lieu of personal notice and service, disapproved in several decisions, was not used in this case.*

Jurisdiction of the trial court cannot be predicated upon a form of consent to the judgment and waiver of further notice, when Con-

gress has outlined the procedure to be followed. In *Stennerman* v. *Brownell*, 204 F.2d 336 (9th Cir., 1953), and *Laranjo* v. *Brownell*, 126 F. Supp. 370 (N.D. Cal., 1954), the Government had used a "Form of Consent and Waiver" as the basis for jurisdiction. In both cases judgment had been entered in the trial court against each defendant the day following the filing of the petitions. There had been no attempt by the Government to comply with the publication and service requirements of the statute. It was held that a denaturalization decree taken by default may be set aside for lack of jurisdiction through improper service, and that a default decree based only on the consent and waiver by the absent defendant cannot operate to nullify his citizenship *ab initio*, because such a consent and waiver is in the nature of a voluntary relinquishment of citizenship and does not evidence a fraud. The "consent and waiver" technique was used in *Matter of C—*, 6 I. & N. Dec. 366, and we followed *Stennerman* and *Laranjo* and found that this procedure (combined with the Government's failure to comply with other statutory requirements) was insufficient, and that the Illinois court never acquired jurisdiction of the absent C— to vacate his decree of citizenship. In the instant case the consent and waiver was not used. A letter from Commissioner of Immigration and Naturalization Service, Washington, D. C., to Immigration and Naturalization Service, New York, April 27, 1938, states, "Mr. Psalidas has refused to sign a form of consent and waiver." This is a significant distinction between *C—* and the instant case.

*A few decisions have permitted attacks on denaturalization decrees for nonprejudicial procedural errors.*

*United States* v. *Kiriaze*, 172 F.2d 1000 (5th Cir., 1949), *United States* v. *Sotis*, 131 F.2d 783 (7th Cir., 1942), and *United States* v. *Milana*, 148 F. Supp. 152 (E.D. Mich., 1957), all held denaturalization judgments void for noncompliance with statutes authorizing service by publication. *Kiriaze*, *supra*, stated that where the United States "seeks not by actual notice to the citizen but by substituted service by publication to deprive him of this precious right, it must strictly comply with the statute authorizing such service." The opinion is not helpful to us, because it does not state in what respect the substituted service failed to comply with the statute. The court said, 172 F.2d 1001, footnote 2, "The contention made was that the judgment was based upon citation by publication under the Mississippi laws and there had been a failure to comply therewith." Kiriaze was caught in Greece during World War II and had been

unable to return to the United States to defend his citizenship against the denaturalization proceeding. The action of the court may have ben influenced by this circumstance.

*Sotis, supra,* held that "there was compliance with the Illinois provision" but that the record did not "show compliance with the federal requirement." The court held that the marshal's "affidavit of nonresidence" was inadequate, and that there was unreasonable delay in publishing the notice. The "affidavit" was executed on March 22, 1938, and filed on March 28, 1938 but the first publication was not made until September 13, 1938. In this respect it is like the instant case. The court declared that the record disclosed no circumstances to justify the unreasonable delay in publishing the notice, and that the delay was such as to invalidate the notice. The court found that the denaturalization decree on March 14, 1939, was a nullity, and could be expunged whenever the jurisdictional question was called to its attention. Sotis had no actual notice, and his certificate of naturalization was cancelled without his knowledge. While his motion to set aside the decree of cancellation was presented nearly three years after the decree was entered, it was within a month after Sotis acquired actual knowledge thereof. Again, the circumstances differ from the instant case where Psalidas received notice at the time of the commencement of the action, but no move was made to challenge the Government's action until his son came to this country 22 years later.

*Milana, supra,* is similar on its facts to the instant case. Palao Milana moved the court to vacate an order entered in 1936 cancelling his father's (Rosario Milana's) certificate of naturalization for having taken up permanent residence in his native country within five years of his naturalization. Rosario died in 1947. Palao attacked the jurisdiction of the court on the ground that Rosario was never served with notice of the proceedings. The Government contended the service was valid, and that Palao was not a proper party to bring the motion, in that, under Rule 60(b) a court might give relief from judgments only on the motion of a "party or his legal representative." The court said that Palao was not born at the time of the order, but *even if he were then in existence his derivative citizenship would not have given him standing to be heard in a proceeding to revoke his father's citizenship,* citing *U. S. ex rel. Harrington* v. *Schlotfeldt,* 136 F.2d 935, 939 (7th Cir., 1943), and *Sanders* v. *Clark,* 76 F. Supp. 486 (D.C. Pa., 1943). The court held, however, citing *Wetmore* v. *Karrick,* 205 U.S. 141 (1907), and other cases, that it may on its own motion set aside a void jud-

87

provided notice has been given of the contemplated action, and an opportunity to be heard is afforded the parties. On this basis, then, the court took jurisdiction of the proceeding, stating, "The conclusion that the judgment in question is void is inescapable," and it is "almost too elementary to bear repeating that a judgment rendered without valid personal or substituted service on the defendant is void." The court found that there was no personal service on Rosario Milano, and that the substituted service did not comply with the statutory provisions in effect in Michigan. It is not clear from the decision whether Milano had *actual* notice of the proceeding. An affidavit in the record stated only that the order of publication was mailed to the defendant but did not state that the mailing was by registered mail and the return receipt demanded, as required by the Michigan statute. There was a delay of three and one-half months between the date of the return that personal service could not be made and the date of the execution of the affidavit of inability to make personal service. The court stated that it must appear *at the time substituted service is employed* that personal service was unobtainable, and the affidavits or proofs were not in the record.

We are not persuaded by *Kiriaze, Sotis* and *Milana* that a delay in service in this type of case constitutes a detriment to the defendant. The reason for the rule that only a short period should elapse between the proof of inability to serve a defendant and the making of the affidavit or the order of publication, or the actual publication, is that "absence from customary places" may be a temporary condition, and there is no inference that it will continue indefinitely. This reasoning loses its application and its logic in a denaturalization proceeding where the very basis of the proceeding is the fact that the citizen has departed from this country and has taken up his residence elsewhere. The Government must establish not only that he is absent from the jurisdiction (as required by the statutes governing substituted service), but that he established his foreign residence within five years of his naturalization. It is this foreign residence that was under the statute (8 U.S.C. 405 (1927)) "prima facie evidence of a lack of intention * * * to become a permanent citizen of the United States."

While a delay in publication may prejudice a defendant in some kinds of litigation, the absentee defendant in a denaturalization proceeding is more apt to be prejudiced by speed than by delay. He is abroad and he must be served through the United States Consul nearest his home. Arrangements to appear personally or by counsel are costly and time-consuming. This could have been the

reason for the leisurely pace[7] which apparently was the standard procedure for these cases in the United States District Court in New York in the 1930's when respondent's father was denaturalized. If service is made at a great distance and the answering time is comparatively short, the constitutional question of due process may arise. The federal statute does not specify any time limit within which the defendant must be served or publication must begin. The court in its Order for Service by Publication specified that service be in accordance with Rules 50 and 52, but did not incorporate in the order the time limit prescribed by Rule 51. Under the circumstances of this case the lapse of five and one-half months between the date of the order for publication and the date publication was commenced did not "trench on any constitutional rights of defendant (Panos Psalidas) nor involve the jurisdiction of the trial court," to borrow from *Sunal* v. *Large*, 67 S.Ct. 1588. During this five and a half month period Panos Psalidas was served by registered mail. At best due process is a slow ritual. What is termed "an unreasonable delay in publishing the notice" in the state court decisions, becomes a reasonable time for the defendant to return to meet the challenge to his citizenship in a denaturalization proceeding.

*The Service contends that Rule 60(b), Federal Rules of Civil Procedure, precludes respondent's attack on the 1940 denaturalization decree.*

The Service representative argued that respondent's present attack on the 1940 decree of denaturalization is precluded by Rule 60(b) of the Federal Rules of Civil Procedure.[8] We have paid particular

---

[7] Exhibit 3: Memorandum to Commissioner of Immigration and Naturalization from Assistant District Director, New York, October 23, 1939, states, "This case is being placed on a call-up for one year."

[8] Rule 60(b). Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable

attention to the discussion of the application of Rule 60(b) in *Title v. United States*, 263 F.2d 28 (9th Cir. 1959), and in *United States v. Borchers*, 163 F.2d 347 (2d Cir., 1947), cert. den. 332 U.S. 811, and *United States v. Kunz*, 163 F.2d 344 (2d Cir., 1947). These cases do not involve the entry of a denaturalization judgment by default. In each case the defendant had appeared but failed to prosecute his appeal. These cases hold that motions to open and vacate do not lie as a substitute for a deliberately abandoned appeal, and that appellants in effect consented to the entry of the decrees against them, that their time to appeal had long since expired, and that the motions, based on alleged newly discovered evidence and other technicalities, had no merit. *Zurini v. United States, supra*, holds that Rule 60(b) of the Federal Rules of Civil Procedure applied to this proceeding and required that a motion to vacate a denaturalization judgment be made within a reasonable time, and, upon certain grounds, within one year.

The Supreme Court in *Klapprott v. United States*, 355 U.S. 601 (1949), split on the application of Rule 60(b) to vacate a denaturalization judgment by default where the judgment was entered without proof of the charges made. The four decisions stressed the "special circumstances," and the majority decision states that Klapprott was as deprived by the Government of an opportunity to defend himself as if he had "never received notice of the charges." There are no "special circumstances" in the matter now before as were present in *Klapprott* (war, criminal prosecution and a long imprisonment).

It seems to us that, only if we were to find the 1940 decree of denaturalization against Panos Psalidas void for lack of jurisdiction, would the application of Rule 60(b) become an issue. Believing that the notice to respondent's father was adequate and complied with the requirements, and that the decree is, therefore, valid and binding, we do not reach this question.

---

time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 23, U.S.C., §1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coran vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action. As amended Dec. 27, 1946, and Dec. 29, 1948, effective Oct. 20, 1949.

*Respondent received adequate notice under the New York law.*

Respondent received personal notice of the petition to revoke his citizenship, but, because he was absent from the United States and from the district in which he last had his residence, he believes that he is entitled also to notice by publication in the manner provided by the laws of New York for serving absentees. The applicable rules of practice are set forth above in footnotes 2, 3 and 4.

The New York Rules of Civil Practice and *Carmody-Wait, Cyclopedia of New York Practice*, make a clear distinction between substituted service and service by publication. New York also permits a third form of service referred to as "service without the state under an order of publication," with which we are not concerned here. The *Cyclopedia* states, Vol. 3, par. 86, p. 191, "Substituted service may be made only within the state upon a resident thereof." Psalides who resided abroad could not have been served by substituted service. Panos Psalidas was, in fact, served by publication as well as personally. Volume 3, par. 105, pp. 212–214, describes service by publication as follows:

Service of a summons by publication is a method adopted, generally speaking, to reach cases where service cannot be effected either personally within the state or by substitution. Nonresident persons and, under certain circumstances, residents who cannot otherwise be reached are thus constructively notified of the commencement of legal proceedings by the publication of the summons in a newspaper in accordance with prescribed formalities for a certain length of time, and the mailing of the summons to them, or by serving the summons personally on the defendant without the state.

The prescribed method of service by publication is designed to afford a reasonable probability that actual notice will reach the defendant. Notice is directed through several channels in the reasonable expectation that, through one of the channels, it will be brought to the attention of the defendant. But the court acquires jurisdiction to proceed in such case whether the defendant is actually notified or not.

Where a summons has been served by publication and a defect in the course of the proceedings has been discovered, the question arises whether the defect is jurisdictional so that the proceedings are absolutely void and not amendable, or whether the defect is a mere irregularity which may be cured. In order for the court to acquire jurisdiction, there must be a substantial compliance with the statute. Notice to the defendant of the pendency of the action given in a manner substantially different from that prescribed by the legislature is nugatory. If a defect is jurisdictional, it is fatal * * *

The court may disregard and cure defects and irregularities "not being against the right and justice of the matter." And so the courts may disregard unsubstantial defects even in the service of process of (sic) publication.

There was an irregularity in service under the New York Rules, as complained by respondent. It is provided by the New York

Rules that the first publication of a summons must be made within three months after the order of publication is granted. (For R.C.P. 51 see footnote 4.) As pointed out above, the order of the court on December 7, 1939, for service by publication made no mention of Rule 51.

Respondent refers to New York cases holding that failure to comply strictly with the statutory requirements for publication rendered proceedings ineffective and that improper mailing is jurisdictional, and not an irregularity. The New York cases on substituted service have no application here. Respondent relies on *Korn* v. *Lipman*, 201 N.Y. 404, 94 N.E. 861 (1911), as the leading New York case concerning substituted service. Substituted service was also involved in *Robinson* v. *Five One Five Associates Corp.*, 180 Misc. 906, 45 N.Y.S.2d 20 (1943), cited by respondent.

We have examined the numerous New York cases and believe the leading cases are *Valz* v. *Sheepshead Bay Bungalow Corp.*, 249 N.Y. 122, 163 N.E. 124, cert. den. 49 S.Ct. 82, 278 U.S. 647, and *Mishkind-Feinberg Realty Co.*, v. *Sidorsky*, 189 N.Y. 402, 82 N.E. 448. In *Valz* v. *Sheepshead Bay Bungalow Corp.*, the court found that there was no willful failure to comply with the order, and that the error did not deprive the defendants of the opportunity to appear and defend. The lower court pointed out, 223 N.Y.S. 329, 337, that a case where the defendant did not know of the pendency of the action should not be followed as authority. That there is a close question is indicated by the fact that the Court of Appeals, 249 N.Y. 122, sustained the decision of the lower court by a vote of four to three. The majority hold that the defendants' failure to appear "was not occasioned, or contributed to, by the defect in publication," and that they received formal notice of their right to defend, and they chose not to assert any defense. Counsel maintains that *Sheepshead Bay* is applicable only to a situation where the error in publication was corrected by a *nunc pro tunc* order. We think the holding is of broader application and that the rule that the defect may be disregarded or cured in the court's discretion where the parties have not been prejudiced is consistent with the holdings in the federal cases of *Cardillo and Antonacci, supra.*

*Mishkind-Feinberg Realty Co.* v. *Sidorsky*, 189 N.Y. 402, 406, N.E. 448, 449, is a persuasive New York authority wherein the court stated:

The Supreme Court has very broad powers, either before or after judgment in furtherance of justice to amend any process, pleading or proceeding. Section 723. It would be difficult to use more comprehensive language than is used in that section. The correction of the clerical error in the order was not harmful to Rabinovitch, but was in furtherance of justice. To deny

power in the court in this case to make such an order would subordinate substance to form.

As with the federal cases, we believe the New York cases which developed from wartime situations should not be considered binding precedents. For example, respondent cites *Risley* v. *Phenix Bank*, 83 N.Y. 318. (Ct. App. N.Y., 1880), which related to the confiscation of property belonging to a South Carolina bank, but which was deposited in a bank in New York. This decision in no way relates to the matter now before us. *Robinson* v. *Five One Five Associates*, *supra*, concerns a defendant whose whereabouts was unknown, because he was serving in the armed forces in World War II. The court stated that clearly he did not know of the action and could not know, and that the Civil Procedure Act was unsuited to wartime conditions.

Respondent cites *Malone* v. *Citarella*, 182 N.Y.S.2d 200 (S.Ct. App. Div. 1959), wherein a judgment obtained in 1940 was found void in 1959 for serious procedural irregularities. The judgment was entered by a clerk with no authority and was a nullity. *Malone* v. *Citarella* differs materially from the instant case which involves both actual notice and what the courts refer to as "substantial compliance."

The state court decisions depend on the individual facts and the applicable statute. For example, *Schulte Real Estate Co., Inc.*, v. *Pirkig*, 78 N.Y.S.2d 815 (S.Ct. N.Y. City, 1948), points out the difference between Rule 50, Rules of Civil Practice of 1933, regarding service by publication, and paragraph 231, Civil Practice Act, 1933, providing for substituted service, and the case involves the latter rule. Counsel cites *In re Manley's Estate*, 226 N.Y.S.2d 21 (Surrog. Ct. N.Y. City, 1962), which is not pertinent for our purposes. It involved an estate and probate controversy, wherein there were false statements of essential facts, and the executrix failed to notify some of the distributees under most questionable circumstances.

Counsel cites *Mojarriets* v. *Saenz*, 80 N.Y. 547 (N.Y. Ct. Apps.; 1880), where publication of a summons was not made within 30 days after an attachment of property, and the court held that by that omission the attachment fell. *Ferguson* v. *Crawford*, 70 N.Y. 253 (N.Y. Ct. Apps., 1887) concerned a foreclosure of a mortgage where the defendant was alleged to have appeared through his attorney, whereas, in fact, neither he nor his attorney was served or appeared, but the appearance by the attorney and consent to entry of a judgment was by forgery. The other New York cases cited also relate to attachments of property, and orders of foreclosure and for damages, and are not pertinent.

93

As pointed out above, there are purposes for the time limits in the state rules and statutes authorizing substituted service or service by publication in state cases. These purposes are absent in a denaturalization proceeding. The state courts recite (see *United States* v. *Sotis, supra)* that there is no presumption of continued absence from customary places, and for this reason service by publication must be accomplished within a given, and usually short, period of time. In denaturalization proceedings there is an assumption of continued absence from the country, and for this reason the state decisions requiring prompt publication deal with the situation in reverse. A policy of delayed publication in a situation where the party has absented himself in a foreign country for an extended period is a practical and sensible policy consonant with due process.

### *Conclusion*

Respondent's father, Panos Psalidas, received notice by registered mail that the United States sought cancellation of his citizenship. The order of publication of the United States District Court required compliance with Rules 50 and 52, but made no provision for compliance with Rule 51 which provided that publication commence within three months of the date of the order. We conclude that if there was a defect in the publication of this notice it was an irregularity rather than a jurisdictional defect, and it was cured when notice was given to respondent by registered mail. The notice to him was adequate both under the federal statutes and under the laws of New York, because it served reasonably to inform him of the legal steps which were being taken against him and afforded him an opportunity to appear and to defend his citizenship.

A few decisions have permitted attacks on denaturalization decrees for procedural errors, even though a period of years has elapsed since the decree was entered.

We believe that the better view is that a procedural error, in this case a delay in publication of notice, not affecting the rights of the parties should be disregarded.

Respondent's complaint about the time of mailing to the United States Consul at Athens, Greece, is not substantial. The Consul knew Psalidas' whereabouts and relayed the notice to him. This constituted the best possible method of serving the defendant.

There is no contention that, had Panos Psalidas been given notice in any manner different from that employed, he would have defended the action. Having received adequate notice, he was under obligation to respond within a reasonable period to protect his rights.

This case differs from *Matter of C—*, 6 I. & N. Dec. 366, in that C— had only 29 days' notice between the time the Government petitioned to cancel his citizenship and the date of the decree of cancellation, and we held that this was not sufficient notice under either the federal statute (giving 60 days) or the Illinois law (giving 30 days). The complaint in the instant case is that too long a period elapsed between the order of publication and the date publication commenced. The defendant in a denaturalization proceeding living abroad may be prejudiced by receiving too short a period of notice, but he is not prejudiced by being given a longer period than the statutory minimum.

This case is distinguishable from *Matter of C—*, also in that C— signed a "consent and waiver" form which was used as a basis of jurisdiction. It has been held that the use of this form constituted a voluntary relinquishment of citizenship in which there is no implication of fraud, rather than a cancellation for presumptive fraud. It has been held also that this "hearsay waiver" and consent constituted a short-cutting of the procedure provided by Congress which the courts will not approve. Psalidas refused to sign this consent and waiver form and he, therefore, was given notice in accordance with the statute.

There is no contention that respondent has any citizenship status independent of his father. Panos Psalidas was denaturalized by a binding decision of the United States District Court in New York on September 28, 1940, and any claim respondent had to United States citizenship was extinguished at that time.

The appeal must be dismissed.

**ORDER:** It is ordered that the appeal be and is hereby dismissed.